**Ernesto SANCHEZ, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. B14–91–01109–CR.**

Court of Appeals of Texas, Houston (14th Dist.).

Aug. 20, 1992.

Discretionary Review Refused Nov. 25, 1992.

William W. Burge, Houston, for appellant.

John B. Holmes, Houston, for appellee.

Before J. CURTISS BROWN, C.J., and SEARS and ELLIS, JJ.

## OPINION

ELLIS, Justice.

Appellant, Ernesto Sanchez, appeals his judgment of conviction for the offense of burglary of a motor vehicle. TEX.PENAL CODE ANN. § 30.04 (Vernon 1989). The jury rejected appellant's not guilty plea and after finding the two enhancement paragraphs of the indictment to be true, assessed punishment at sixty (60) years in the Institutional Division of the Texas Department of Criminal Justice. We affirm.

The relevant facts are as follows: Greg Dalton and W.R. Kelley, narcotics officers with the Pasadena Police Department testified that appellant and the driver of the truck in which appellant was a passenger were under surveillance on May 31, 1991. The Pasadena Police Department had received information from a confidential informant that appellant was going to steal an automobile. While maintaining surveillance, Officer Dalton testified that the two individuals drove through several parking lots looking at vehicles. At one point the truck pulled up beside a Ford Bronco and appellant got out. After appellant got out of the truck, the truck drove off. Dalton testified that appellant went to the driver's side of the Bronco, pulled out a screwdriver, popped open the vent window and reached in to unlock the door. Officer Kelley testified that he was about 50 yards away when he observed appellant approach the Bronco and mess with the vent window. He then observed the door open and close.

Dalton further testified that appellant had a slam hammer with him and started working on the ignition in the truck. Dalton also explained how auto thieves used slam hammers. Dalton had positioned himself on the hood of another car and could see appellant trying to pop the ignition. When Dalton yelled police, appellant dropped the slam hammer and jumped out of the Bronco. Appellant was arrested by other officers. Both officers testified that they never lost sight of appellant. The slam hammer and screwdriver used by appellant were recovered from the Bronco and admitted into evidence.

Melanie Ford Sheffield, testified that she was the owner of the Bronco appellant was attempting to steal. She testified that she did not know appellant, had never met appellant and did not give anyone but her son permission to use the Bronco. She testified that her son was driving the Bronco the evening of the offense. Dustin Sheffield, the complainant's son, testified that he was using the Bronco on the night of the offense. He also testified that he did not know appellant, had never met him and never gave him permission to use the Bronco.

Appellant brings two points of error on his appeal. Appellant asserts in his first point of error that the trial court committed reversible error in overruling appellant's motion for a mistrial following the prosecutor's reference during final argument to the appellant's failure to testify.

The record reflects that during the State's voir dire the prosecutor stated:

> Now, I also have to prove that he did it with intent to commit theft. Now, how do you do that? Well, I can't call him to

the stand. He has a constitutional right, and none of you can hold it against him if he exercises that right. I don't know what he is going to do; but you can't hold it against him if he exercises that right.

But also I can't prove what is going on in his head. Only way I can prove that is by the facts and circumstances of that case; and I can't go into the facts and circumstances of the case now. But all I have to prove is that he did it with the intent to commit theft, and all I can do is by looking at the facts and surrounding circumstances. It goes back to the question: Is there anybody here who would actually require me to prove that he stole something and got away and stole something?

Also, is there anyone here who is going to hold it against the State because I can't go into his mind, I can't make him testify, or who would feel uncomfortable about finding somebody guilty of a crime knowing that the State can't, you know, compel the truth out of someone's mind? Just raise your hand.

During the defense's closing argument, the record reflects that appellant's trial counsel while discussing the elements of the offense stated:

How in the world can he see this defendant coming out of here carrying any kind of tool? Then without intent—I mean with intent to commit a felony or theft. We never went into Mr. Sanchez's head. We don't know what his intent was. I don't think they proved that tall [sic] other than through circumstantial evidence.

During the State's closing argument, the following occurred:

And the issue of some kind of entrapment. He was somehow, you know, provoked into this? And then she (Defense Attorney) says I didn't get into his head. I can't. I can't get into his head. We talked about that on voir dire. She is not asking you to keep any promises you made. She is asking you to break them. I can't go into the defendant's head. I can't call him to the stand.

DEFENSE ATTORNEY: Objection, your Honor. I think he is bringing up to the jury that my defendant didn't take the stand.

THE COURT: Sustained. Members of the jury, that is highly improper. You be quiet.

Members of the jury, you are not to consider the defendant's absolute right not to take take [sic] the stand. The State has not [sic] right to insinuate— you are not to consider his failure to testify for any purpose. You are to put it out of your mind and not to consider it for any purposes in this case.

DEFENSE ATTORNEY: Your honor, I would like to move for a mistrial.

THE COURT: Denied. Proceed.

PROSECUTOR: Defense counsel said in closing argument that the State did not go into the defendant's head. That's all I'm talking about. I couldn't.

DEFENSE ATTORNEY: Objection. Your Honor, that's the same thing he said before.

THE COURT: Sustained. Members of the jury, the defendant does not have to testify. He has an absolute right not to testify in any criminal case, and you are not to hold it against him for any purpose whatsoever. It's highly improper for the State to insinuate, as they have done now on two occasions, that he has an obligation to testify. He has absolutely no obligation to testify. Do not consider it at all for any purpose whatsoever.

DEFENSE COUNSEL: Your honor, I move for a mistrial.

THE COURT: Denied.

■ Remarks by a prosecutor invited by the argument of defense counsel are proper. *Vigneault v. State,* 600 S.W.2d 318, 329 (Tex.Crim.App.1980). A prosecutor's closing argument which refers to the defendant's failure to testify is permissible when it is invited by defense counsel's closing argument. *Zertuche v. State,* 774 S.W.2d 697, 699 (Tex.App.—Corpus Christi 1989, pet. ref'd); *Sorenson v. State,* 709

S.W.2d 321, 323 (Tex.App.—Texarkana 1986, no pet.).

■ Clearly, the prosecutor's response was invited by defense's counsel statement that "we didn't get into his head" and that the State didn't prove their case with circumstantial evidence. By making this statement defense counsel was insinuating that the State could have proven what was in appellant's head. The prosecutor was merely responding and explaining that he could not get into appellant's head.

The situation in the case at bar is very similar to the situation in *Zertuche, supra.* In that case the defense counsel argued:

> DEFENSE COUNSEL: The State must prove it, through evidence, that this man was in control and had knowledge that he was in control of a controlled substance and had the intent to possess it. How can they tell you about his intent when only a person, only you, yourself, in your mind, your only intent, how can they say he had the intent to possess it when there is no evidence of his mental state, no evidence at all?

In response the State argued:

> Counsel just got through telling you that we did not show what the defendant's state of mind was. Remember when he said that? Well, how can I possibly show you what his state of mind is? He exercised his right to remain silent.

In that case, appellant's objection was overruled. The Court held the State's argument was invited by defense counsel's argument as to appellant's state of mind. This is the situation in the case at bar. The prosecutor's remarks were invited by defense counsel's remarks that they didn't get into his head. The prosecutor was merely explaining why he couldn't get into appellant's head and only reinforced what he had explained in voir dire about appellant's constitutional right not to testify. We also find that he did not exceed the scope of the invitation.

■ Although the argument was invited, the trial court sustained appellant's objection and gave the jury an instruction to disregard. An instruction to disregard can be sufficient to cure a trial prosecutor's comment upon a defendant's failure to testify. *Jackson v. State,* 745 S.W.2d 4, 15 (Tex.Crim.App.1988), *cert. denied,* 487 U.S. 1241, 108 S.Ct. 2916, 101 L.Ed.2d 947 (1988). It is presumed that the jury obeyed the instruction to disregard. *Nichols v. State,* 754 S.W.2d 185, 200 (Tex.Crim.App. 1988), *cert. denied,* 488 U.S. 1019, 109 S.Ct. 819, 102 L.Ed.2d 808 (1989). The complained of argument is not of such a nature that the jury would not or could not follow the instruction of the judge. *See Zeller v. State,* 728 S.W.2d 107 (Tex.App.—Houston [14th Dist.] 1987, no pet.).

In addition, error if any, was harmless in light of the overwhelming evidence against appellant. The proper standard for determining whether an improper jury argument constitutes harmless error is TEX.R.APP.P. 81(b)(2). *Orona v. State,* 791 S.W.2d 125 (Tex.Crim.App.1990). Appellant was under surveillance by police officers and was observed breaking into the complainant's Bronco by at least the two police officers who testified. They had followed him while he drove through several parking lots looking for a vehicle. Officer Dalton observed him break into the window using a screwdriver and then observed as appellant used a slam hammer to attempt to pop the ignition. He was apprehended as he ran away from the vehicle. The tools appellant used were recovered in the vehicle. We find that in light of the nature of the complained of argument and the overwhelming evidence, any error was harmless beyond a reasonable doubt and made no contribution to the conviction or punishment. Appellant's first point of error is overruled.

■ Appellant contends in his second point of error that the trial court committed reversible error by excusing a juror after the charge was read to the jury.

The record reflects that twelve jurors rendered a guilty verdict against appellant. The State and defense put on evidence in the punishment phase of the trial. The jury was then dismissed for the day. Prior to the charge on punishment being read,

one of the jurors, Kimberly Gordon, became ill. The trial court questioned the juror in his chambers as to the nature of her illness and determined she was disabled. The jury charge on punishment was then read to the jury. The eleven jurors returning the verdict all signed the verdict.

TEX.CODE CRIM.PROC., art. 36.29, provides:

(a) Not less than twelve jurors can render and return a verdict in a felony case. It must be concurred in by each juror and signed by the foreman. Except as provided in Subsection (b) of this section, however, when pending the trial of any felony case, one juror my die or be disabled from sitting at any time before the charge of the court is read to the jury, the remainder of the jury shall have the power to render the verdict; but when the verdict shall be rendered by less than the whole number, it shall be signed by every member of the jury concurring in it.

    *     *     *     *     *     *

(c) After the charge of the court is read to the jury, if any one of them becomes so sick as to prevent the circumstance of his duty, or any accident of circumstance occurs to prevent their being kept together under circumstances under which the law or the instructions of the court requires that they be kept together, the jury shall be discharged.

Appellant contends that because the charge had been read to the jury at the guilt innocence stage of the trial, the charge had been read to the jury as contemplated in Article 36.29, but cites no authority for this contention. This argument was rejected in *Campbell v. State*, 644 S.W.2d 154, 162 (Tex.App.—Austin 1982, pet. ref'd) at 647 S.W.2d 660 (Tex. Crim.App.1983).

Although in the case at bar, punishment evidence had been completed, clearly the juror was excused prior to the reading of the charge on punishment. Since this was the second phase of a bifurcated trial, in which a completely different charge is given to the jury, the juror was excused prior to the charge being read regarding the issue the jury was to decide. Therefore, appellant has failed to show that the trial court erred in denying appellant's motion for mistrial. Appellant's second point of error is overruled.

Accordingly, the judgment of the trial court is affirmed.