# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-01-00566-CR

**Jay Fieldon Howell, Appellant**

**v.**

**The State of Texas, Appellee**

## FROM THE CRIMINAL DISTRICT COURT 2 OF TARRANT COUNTY
## NO. 0711028D, HONORABLE DAVID R. WHITE JR., JUDGE PRESIDING

Appellant Jay Fieldon Howell bludgeoned and stabbed a fourteen-year-old girl in a shed behind his home. Two days later, after being taken into custody, he confessed. Appellant pleaded guilty to serious bodily injury to a child. *See* Tex. Pen. Code Ann. ' 22.04(a)(1) (West Supp. 2002). The district court sentenced him to imprisonment for sixty years. In two issues, appellant contends that the court erred by overruling his motion to suppress his confession and in admitting inflammatory photographs at sentencing. We overrule appellant=s issues and affirm the judgment.

## BACKGROUND

The record before us consists of the testimony at a hearing on appellant=s motion to suppress. We summarize the testimony as follows: On October 25, 2000, after watching pornography and

listening to music by Marilyn Manson and the band Six Feet Under, appellant invited the fourteen-year-old complainant to see the shed in his backyard, which he had decorated with barbed wire, an upside-down cross, and satanic verses and sayings scrawled in magic marker on the walls. Once inside the shed, appellant asked the girl to write something on the walls. As she began to write, appellant hit her on the back of her head with a cinder block. He then held her down and stabbed her in the neck. When she tried to scream, he put his fist in her mouth. At some point in the attack, he inserted his fingers into the neck wound, banged her head against the concrete floor, and bludgeoned her with a baseball bat.

As she pleaded for her life, appellant began pacing in and out of the shed. To quiet her continued pleas, he told her he would go for help. Over the next several hours, appellant exited and returned to the shed three times, each time telling her he tried but was unable to find help. As he deliberated whether he should kill her, he developed a cover story. Appellant told the complainant that, if she agreed to go along with the story and not turn him in, he would take her to the hospital. The complainant agreed and appellant then relayed to his mother the story that he found the complainant in an alley, at which time they transported her to the hospital.

The complainant remained in the hospital for several days, suffering from stab wounds to her neck and lacerations to her head. Sergeant Sharon Kamper of the Fort Worth Police Department visited the complainant in the hospital. At the time of Kamper=s first visit, the complainant was fearful and unable to speak because of the wounds to her throat. When she did speak to Kamper, she initially reported the story appellant devised and she had agreed to tell.

**2**

Sergeant Kamper also interviewed appellant. Appellant told her that he had found the complainant in an alley where she had been left for dead by unknown attackers. When Kamper confronted appellant with the lack of physical evidence in the alleyCconsidering the complainant had lost so much bloodCappellant could not explain it. Kamper then re-interviewed the complainant. After telling Kamper, AHe=s going to kill me,@ the complainant told Kamper about the assault in the shed.

Acting on the complainant=s information, Sergeant Kamper and Officer Wayne Browning, along with other Fort Worth police officers, arrested appellant at approximately 8:00 p.m. on October 28 at his home where he lived with his mother. Both Sergeant Kamper and Officer Browning testified that Officer Browning advised appellant of his rights at the time of his arrest before he was transported to the police station. *See Miranda v. Arizona*, 384 U.S. 436, 467-76 (1966); *see also* Tex. Code Crim. Proc. Ann. art. 38.22 (West 1979 & Supp. 2002). At the police station, appellant agreed to give a statement and Sergeant Kamper again advised him of his rights. She asked him to put in writing what he told her and he complied with her request.

Sergeant Kamper gave appellant a statement form with the *Miranda* and article 38.22 warnings at the top of the page. She testified that he followed along as she read aloud the warnings on the form. On a separate form, appellant initialed each of the warnings and signed an acknowledgment that he understood his rights and voluntarily waived them. Approximately one hour after being taken into custody, appellant began writing out a four-page statement. Sergeant Kamper testified that she left appellant alone in a room for approximately three hours while he wrote out his statement in which he explained, AI always had an urge to find out what it would be like to kill somebody.@ He described in vivid detail his lengthy assault

**3**

on the complainant. He also described his thoughts in the hours following the assault: AI decided not to kill her and then started thinking about a story to cover my tracks and then shared this with her and had her agree not to turn me in and she did. I then agreed to help her.@

Officer Browning testified that he transported appellant to the Tarrant County jail after appellant had completed the statement. While they were waiting in the sally port at the threshold of the jail door, appellant turned to Officer Browning and asked: ADo you know what I learned today?@ When the officer asked him AWhat?@, appellant replied: AI learned that I=m not into cannibalism, and I thought I would be, and I also learned that next time don=t leave anyone alive to testify against me.@

**DISCUSSION**

*Motion to Suppress*

By his first issue, appellant contends his written statement should have been suppressed because Sergeant Kamper promised him leniency in return for his confession and that the statement was therefore involuntary. The State responds that it made no promises to appellant and the trial court=s ruling is supported by the record. We review a trial court=s ruling on a motion to suppress evidence for an abuse of discretion. *Villareal v. State*, 935 S.W.2d 134, 138 (Tex. Crim. App. 1996). In this review, we defer to the district court=s factual determinations but review *de novo* the court=s application of the law to the facts. *See Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). Where the district court does not make explicit findings of fact, we review the evidence in the light most favorable to its ruling and assume that it made implicit findings that are supported by the record and buttress its conclusion. *Carmouche v. State*, 10 S.W.3d 323, 327-28 (Tex. Crim. App. 2000).

**4**

Appellant testified at the hearing that he was not advised of his rights before giving his statement. Acknowledging that he did not recall Kamper=s specific words, appellant explained that Asomewhere along the lines there she asked or she mentioned that it would help me along the lines, probablyCI believe she was referring to punishment-wise. By writing this statement, it would help me. That was basically it.@ Appellant testified that it was this Apromise@ that induced him to give the statement. On cross-examination, appellant testified:

[Appellant]:    [W]hen she said that writing the statement would help me, I knew that not physically from her, but through the court that the statement would help me in court, that it would help lessen my time, and a better deal would be brought to me.

[Prosecutor]:   So you=re not saying that she promised you anything personally?

[Appellant]:    Correct.

[Prosecutor]:   You=re saying that she made a suggestion that if you confessed that it might ultimately help you down the road?

[Appellant]:    Yes.

[Prosecutor]:   But you understood she was not in control of that?

[Appellant]:    Correct.

Sergeant Kamper testified that Officer Browning Amirandized@ appellant at the time of his arrest and that she read him his warnings before she interviewed him at the police station. She testified unequivocally that she did not make appellant any promises of leniency, and that she specifically advised him of his right not to give a statement because it could be used against him. Officer Browning testified that he

heard Sergeant Kamper advise appellant of his rights and that he did not hear her suggest appellant would be treated leniently if he gave a statement.

Before giving the written statement, appellant received complete warnings and acknowledged that he understood those warnings. Moreover, the form contained the following waiver of rights language: AI have read and understand my legal rights as stated above on this document. I freely, voluntarily and knowingly waive these legal rights, and agree to be interviewed by police.@ Appellant=s signature appears immediately below the waiver of rights. Appellant does not contend that he did not understand his rights.

AAt a suppression hearing, the trial court is the sole judge of the credibility of witnesses and the weight of their testimony.@ *Wyatt v. State*, 23 S.W.3d 18, 23 (Tex. Crim. App. 2000). We will not disturb the trial court=s findings if those findings are supported by the record. *Id.* When the findings are supported by the record, as here, we consider only whether the trial court properly applied the law to the facts. *Id*. We conclude the evidence supports the trial court=s implied finding that the State did not promise appellant leniency. Thus, his argument that the written statement was involuntary is without merit. Accordingly, we hold that the trial court did not abuse its discretion by admitting the statement. *See Balentine v. State*, 71 S.W.3d 763, 768 (Tex. Crim. App. 2002). We overrule appellant=s first issue.

*Photographs*

In his second issue, appellant contends the trial court erred in admitting crime scene photographs during the punishment/sentencing phase of the trial. Specifically, he urges that the probative value of photographs of the crime scene depicting a poem entitled ASatan=s Palace,@ cartoon drawings of a

**6**

decapitated female, the cinder block used in the offense, barbed wire, and blood stains were outweighed by their prejudicial effect. *See* Tex. R. Evid. 403. We disagree.

Evidence is relevant if it has Aany tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.@ Tex. R. Evid. 401. The admission of photographs into evidence is within the discretion of the trial court and will not be disturbed absent an abuse of that discretion. *See Wyatt*, 23 S.W.3d at 29. Rule of Evidence 403 requires that, to be admissible, a photograph must have some probative value which must not Abe substantially outweighed by its inflammatory nature.@ *Rojas v. State*, 986 S.W.2d 241, 249 (Tex. Crim. App.1998) (quoting *Long v. State*, 823 S.W.2d 259, 272 (Tex. Crim. App. 1991)). When making this determination, relevant factors to consider include: the number of exhibits offered, their gruesomeness, detail, size, whether they are in color, are close-up shots, whether the body is naked, the availability of other means of proof, and other circumstances unique to the individual case. *Id*.

Appellant does not identify which of the twenty crime scene photographs admitted into evidence are unduly prejudicial. Even if we assume the complained-of photographs are the ones to which he lodged objections in the trial court and that the issue is properly briefed because of this failure to specify the photographs, *see* Tex. R. App. P. 38.1(h), we conclude that the photographs are admissible. Appellant urges that the photographs are Adisturbing,@ Agruesome,@ and Ashocking,@ and are certain to have a Aprejudicial effect@ on the sentencing judge. While the photographs are grotesque and certainly disturbing, none of them portray the complainant=s wounds or injuries, or are of the type of photographs generally excluded. *Cf. Mathis v. State*, 67 S.W.3d 918, 930 (Tex. Crim. App. 2002) (ABut when the power of the

**7**

visible evidence emanates from nothing more than what the defendant has himself done we cannot hold that the trial court has abused its discretion merely because it admitted the evidence.@); *Ripkowski v. State*, 61 S.W.3d 378, 391 (Tex. Crim. App. 2001) (AAlthough appellant also claims unfair prejudice, we find that the videotape simply reflects the gruesomeness of the crimeCand that is not a sufficient reason for excluding the evidence.@); *Rojas*, 986 S.W.2d at 249.  Appellant claimed to be a ASatanist,@ and his objection relates to the admission of photographs depicting his lifestyleCas exhibited on the walls of the shedCand the objects used to inflict injuries on the complainant.  After reviewing the photographs, we hold that the trial court did not abuse its discretion in admitting the exhibits.  We overrule appellant=s second issue.

## CONCLUSION

Having overruled appellant=s issues, we affirm the judgment of conviction.

Jan P. Patterson, Justice

Before Justices Kidd, Patterson and Puryear

Affirmed

Filed:   June 13, 2002

Do Not Publish

**8**