TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN








NO. 03-01-00566-CR






Jay Fieldon Howell, Appellant


v.


The State of Texas, Appellee







FROM THE CRIMINAL DISTRICT COURT 2 OF TARRANT COUNTY

NO. 0711028D, HONORABLE DAVID R. WHITE JR., JUDGE PRESIDING




 


 Appellant Jay Fieldon Howell bludgeoned and stabbed a fourteen-year-old girl in a
shed behind his home. Two days later, after being taken into custody, he confessed. Appellant
pleaded guilty to serious bodily injury to a child. See Tex. Pen. Code Ann. § 22.04(a)(1) (West
Supp. 2002). The district court sentenced him to imprisonment for sixty years. In two issues,
appellant contends that the court erred by overruling his motion to suppress his confession and in
admitting inflammatory photographs at sentencing. We overrule appellant's issues and affirm the
judgment.


BACKGROUND

 The record before us consists of the testimony at a hearing on appellant's motion to
suppress. We summarize the testimony as follows: On October 25, 2000, after watching
pornography and listening to music by Marilyn Manson and the band Six Feet Under, appellant
invited the fourteen-year-old complainant to see the shed in his backyard, which he had decorated
with barbed wire, an upside-down cross, and satanic verses and sayings scrawled in magic marker
on the walls. Once inside the shed, appellant asked the girl to write something on the walls. As she
began to write, appellant hit her on the back of her head with a cinder block. He then held her down
and stabbed her in the neck. When she tried to scream, he put his fist in her mouth. At some point
in the attack, he inserted his fingers into the neck wound, banged her head against the concrete floor,
and bludgeoned her with a baseball bat.

 As she pleaded for her life, appellant began pacing in and out of the shed. To quiet
her continued pleas, he told her he would go for help. Over the next several hours, appellant exited
and returned to the shed three times, each time telling her he tried but was unable to find help. As
he deliberated whether he should kill her, he developed a cover story. Appellant told the
complainant that, if she agreed to go along with the story and not turn him in, he would take her to
the hospital. The complainant agreed and appellant then relayed to his mother the story that he found
the complainant in an alley, at which time they transported her to the hospital.

 The complainant remained in the hospital for several days, suffering from stab
wounds to her neck and lacerations to her head. Sergeant Sharon Kamper of the Fort Worth Police
Department visited the complainant in the hospital. At the time of Kamper's first visit, the
complainant was fearful and unable to speak because of the wounds to her throat. When she did
speak to Kamper, she initially reported the story appellant devised and she had agreed to tell.

 Sergeant Kamper also interviewed appellant. Appellant told her that he had found
the complainant in an alley where she had been left for dead by unknown attackers. When Kamper
confronted appellant with the lack of physical evidence in the alley--considering the complainant
had lost so much blood--appellant could not explain it. Kamper then re-interviewed the
complainant. After telling Kamper, "He's going to kill me," the complainant told Kamper about the
assault in the shed.

 Acting on the complainant's information, Sergeant Kamper and Officer Wayne
Browning, along with other Fort Worth police officers, arrested appellant at approximately 8:00 p.m.
on October 28 at his home where he lived with his mother. Both Sergeant Kamper and Officer
Browning testified that Officer Browning advised appellant of his rights at the time of his arrest
before he was transported to the police station. See Miranda v. Arizona, 384 U.S. 436, 467-76
(1966); see also Tex. Code Crim. Proc. Ann. art. 38.22 (West 1979 & Supp. 2002). At the police
station, appellant agreed to give a statement and Sergeant Kamper again advised him of his rights. 
She asked him to put in writing what he told her and he complied with her request.

 Sergeant Kamper gave appellant a statement form with the Miranda and article 38.22
warnings at the top of the page. She testified that he followed along as she read aloud the warnings
on the form. On a separate form, appellant initialed each of the warnings and signed an
acknowledgment that he understood his rights and voluntarily waived them. Approximately one
hour after being taken into custody, appellant began writing out a four-page statement. Sergeant
Kamper testified that she left appellant alone in a room for approximately three hours while he wrote
out his statement in which he explained, "I always had an urge to find out what it would be like to
kill somebody." He described in vivid detail his lengthy assault on the complainant. He also
described his thoughts in the hours following the assault: "I decided not to kill her and then started
thinking about a story to cover my tracks and then shared this with her and had her agree not to turn
me in and she did. I then agreed to help her."

 Officer Browning testified that he transported appellant to the Tarrant County jail
after appellant had completed the statement. While they were waiting in the sally port at the
threshold of the jail door, appellant turned to Officer Browning and asked: "Do you know what I
learned today?" When the officer asked him "What?", appellant replied: "I learned that I'm not into
cannibalism, and I thought I would be, and I also learned that next time don't leave anyone alive to
testify against me."


DISCUSSION

Motion to Suppress

 By his first issue, appellant contends his written statement should have been
suppressed because Sergeant Kamper promised him leniency in return for his confession and that
the statement was therefore involuntary. The State responds that it made no promises to appellant
and the trial court's ruling is supported by the record. We review a trial court's ruling on a motion
to suppress evidence for an abuse of discretion. Villareal v. State, 935 S.W.2d 134, 138 (Tex. Crim.
App. 1996). In this review, we defer to the district court's factual determinations but review de novo
the court's application of the law to the facts. See Guzman v. State, 955 S.W.2d 85, 89 (Tex. Crim.
App. 1997). Where the district court does not make explicit findings of fact, we review the evidence
in the light most favorable to its ruling and assume that it made implicit findings that are supported
by the record and buttress its conclusion. Carmouche v. State, 10 S.W.3d 323, 327-28 (Tex. Crim.
App. 2000).

 Appellant testified at the hearing that he was not advised of his rights before giving
his statement. Acknowledging that he did not recall Kamper's specific words, appellant explained
that "somewhere along the lines there she asked or she mentioned that it would help me along the
lines, probably--I believe she was referring to punishment-wise. By writing this statement, it would
help me. That was basically it." Appellant testified that it was this "promise" that induced him to
give the statement. On cross-examination, appellant testified:


[Appellant]: [W]hen she said that writing the statement would help me, I knew
that not physically from her, but through the court that the statement
would help me in court, that it would help lessen my time, and a
better deal would be brought to me.


[Prosecutor]: So you're not saying that she promised you anything personally?


[Appellant]: Correct.


[Prosecutor]: You're saying that she made a suggestion that if you confessed that
it might ultimately help you down the road?


[Appellant]: Yes.


[Prosecutor]: But you understood she was not in control of that?


[Appellant]: Correct.



 Sergeant Kamper testified that Officer Browning "mirandized" appellant at the time
of his arrest and that she read him his warnings before she interviewed him at the police station. She 
testified unequivocally that she did not make appellant any promises of leniency, and that she
specifically advised him of his right not to give a statement because it could be used against him. 
Officer Browning testified that he heard Sergeant Kamper advise appellant of his rights and that he
did not hear her suggest appellant would be treated leniently if he gave a statement.

 Before giving the written statement, appellant received complete warnings and
acknowledged that he understood those warnings. Moreover, the form contained the following
waiver of rights language: "I have read and understand my legal rights as stated above on this
document. I freely, voluntarily and knowingly waive these legal rights, and agree to be interviewed
by police." Appellant's signature appears immediately below the waiver of rights. Appellant does
not contend that he did not understand his rights.

 "At a suppression hearing, the trial court is the sole judge of the credibility of
witnesses and the weight of their testimony." Wyatt v. State, 23 S.W.3d 18, 23 (Tex. Crim. App.
2000). We will not disturb the trial court's findings if those findings are supported by the record. 
Id. When the findings are supported by the record, as here, we consider only whether the trial court
properly applied the law to the facts. Id. We conclude the evidence supports the trial court's implied
finding that the State did not promise appellant leniency. Thus, his argument that the written
statement was involuntary is without merit. Accordingly, we hold that the trial court did not abuse
its discretion by admitting the statement. See Balentine v. State, 71 S.W.3d 763, 768 (Tex. Crim.
App. 2002). We overrule appellant's first issue.


Photographs

 In his second issue, appellant contends the trial court erred in admitting crime scene
photographs during the punishment/sentencing phase of the trial. Specifically, he urges that the
probative value of photographs of the crime scene depicting a poem entitled "Satan's Palace,"
cartoon drawings of a decapitated female, the cinder block used in the offense, barbed wire, and
blood stains were outweighed by their prejudicial effect. See Tex. R. Evid. 403. We disagree.

 Evidence is relevant if it has "any tendency to make the existence of any fact that is
of consequence to the determination of the action more probable or less probable than it would be
without the evidence." Tex. R. Evid. 401. The admission of photographs into evidence is within
the discretion of the trial court and will not be disturbed absent an abuse of that discretion. See
Wyatt, 23 S.W.3d at 29. Rule of Evidence 403 requires that, to be admissible, a photograph must
have some probative value which must not "be substantially outweighed by its inflammatory nature." 
Rojas v. State, 986 S.W.2d 241, 249 (Tex. Crim. App.1998) (quoting Long v. State, 823 S.W.2d 259,
272 (Tex. Crim. App. 1991)). When making this determination, relevant factors to consider include:
the number of exhibits offered, their gruesomeness, detail, size, whether they are in color, are close-up shots, whether the body is naked, the availability of other means of proof, and other circumstances
unique to the individual case. Id.

 Appellant does not identify which of the twenty crime scene photographs admitted
into evidence are unduly prejudicial. Even if we assume the complained-of photographs are the ones
to which he lodged objections in the trial court and that the issue is properly briefed because of this
failure to specify the photographs, see Tex. R. App. P. 38.1(h), we conclude that the photographs are
admissible. Appellant urges that the photographs are "disturbing," "gruesome," and "shocking," and
are certain to have a "prejudicial effect" on the sentencing judge. While the photographs are
grotesque and certainly disturbing, none of them portray the complainant's wounds or injuries, or
are of the type of photographs generally excluded. Cf. Mathis v. State, 67 S.W.3d 918, 930 (Tex.
Crim. App. 2002) ("But when the power of the visible evidence emanates from nothing more than
what the defendant has himself done we cannot hold that the trial court has abused its discretion
merely because it admitted the evidence."); Ripkowski v. State, 61 S.W.3d 378, 391 (Tex. Crim. App.
2001) ("Although appellant also claims unfair prejudice, we find that the videotape simply reflects
the gruesomeness of the crime--and that is not a sufficient reason for excluding the evidence.");
Rojas, 986 S.W.2d at 249. Appellant claimed to be a "Satanist," and his objection relates to the
admission of photographs depicting his lifestyle--as exhibited on the walls of the shed--and the
objects used to inflict injuries on the complainant. After reviewing the photographs, we hold that
the trial court did not abuse its discretion in admitting the exhibits. We overrule appellant's second
issue.


CONCLUSION

 Having overruled appellant's issues, we affirm the judgment of conviction.



 

 Jan P. Patterson, Justice

Before Justices Kidd, Patterson and Puryear

Affirmed

Filed: June 13, 2002

Do Not Publish