Opinion Issued May 12, 2005
 









     





In The
Court of Appeals
For The
First District of Texas




NO. 01-04-00195-CR




DAVID CHARLES HOLFORD, Appellant

V.

THE STATE OF TEXAS, Appellee




On Appeal from the 183rd District Court
Harris County, Texas
Trial Court Cause No. 973817




O P I N I O N

          A jury convicted appellant David Charles Holford of capital murder and
assessed punishment at life imprisonment. On appeal, Holford contends that the trial
court erred in (1) charging the jury with ambiguous application paragraphs; (2) using
a disjunctive jury instruction with a general verdict; and (3) admitting autopsy
photographs into evidence. We hold that the trial court did not err in charging the
jury and did not abuse its discretion in admitting the photographs into evidence. We
therefore affirm.
Facts
          David Holford and his co-defendant, Harold Vaughn,


 were charged with the
robbery and murder of eighteen-year-old Trevor Cook. Cook dated Gina Powell, who
often visited his apartment. She sometimes would be accompanied by her friend
Sheila Bricht. 
          Cook sold drugs out of his apartment. He kept the bathroom closet, containing
his main supply of drugs, locked. Cook allowed clients to view his secondary stash
of drugs, which he kept in the kitchen. It was well-known that Cook often kept $1,000
or more worth of cocaine and large sums of cash in the apartment. Cook’s upstairs
neighbor, Ryan Wick, advised him to be more careful about showing people his money
and drugs.
          Holford regularly visited Cook’s apartment to buy cocaine and play video
games. Vaughn sometimes accompanied Holford when visiting Cook’s apartment. 
Vaughn was known for his aggressiveness, and he always carried a knife with him. 
He also sometimes carried a one-and-one-half foot long, rusty red wrench with a spike
on it. Holford knew of Vaughn’s temper. Although Holford had received a monetary
settlement from a motorcycle accident in the summer of 2000, the money was under
his parents’ control, and he complained about limits on his spending. 
          In August 2001, Holford confided in one of his friends, Dan Dickerson, that he
was thinking about “jacking” Cook or taking Cook’s drugs and money. In early
January 2002, Vaughn complained of his financial problems to Holford. Holford
stated that he knew someone whom they could jack, but they would have to kill him. 
          On January 13, 2002, at approximately 3:00 p.m., Vaughn and Holford were
present when Cook transacted a drug deal with one of his friends, Ronald Hornburg. 
Both Vaughn and Holford remained inside Cook’s apartment while the transaction
took place. Sometime between 3:30 and 4:00 p.m., Cook’s neighbor heard the sound
of Cook’s gate opening and closing and saw Vaughn emerge from inside the
apartment. A short time later, the neighbor heard more noises and saw both Holford
and Vaughn outside Cook’s apartment. Ten to fifteen minutes later, Wick heard some
loud knocking on Cook’s door, which continued for approximately twenty minutes. 
          Having unsuccessfully attempted to reach Cook since around noon that day,
Powell and Bricht arrived at Cook’s apartment at approximately 4:00 p.m. to return
Cook’s truck to his possession, which Powell earlier had borrowed. Cook did not
answer his door or his cell phone. Powell noticed that Cook’s bedroom window was
unlatched, which she found unusual. The screen over the window was loose and fell
to the floor with a mere touch. The women climbed through the window into the
apartment.  Upon entering Cook’s apartment, the women noticed that his belongings
were in disarray and that his dog was acting in a disturbed manner. The women
discovered Cook lying on the living room floor in a pool of blood, and they called the
police. They then ran upstairs to inform Wick of Cook’s death and to obtain the
correct address for the apartment. 
          While Bricht waited outside for the police, Vaughn walked up with two fresh
scratches on his face, wearing one of Cook’s shirts. Vaughn entered the apartment and
viewed Cook’s body, but appeared unaffected by what he saw. After saying, “I’ve got
to get out of here,” Vaughn left.
          Officers James Ramsey and Janet Nederland of the Houston Police Department
Homicide Division and Crime Scene Investigation unit, respectively, arrived and
inspected the apartment. The investigation revealed blood on a washcloth, which
DNA testing later matched to Vaughn. The investigation also revealed a broken
bathroom closet door. The contents of the closet had been removed.
          When Holford’s friend, Dickerson, learned of Cook’s death, he conveyed the
information to Holford. Dickerson was shocked that Holford was unsympathetic; he 
heard Holford say to Vaughn, in a hushed voice, “He heard about the move,” a phrase
denoting some illegal activity. The next day, Dickerson called the police and told
them that Vaughn and Holford were possible suspects. 
          Approximately a week after the murder, Christopher Vasquez, a friend of
Holford’s, went to Vaughn’s apartment, where he saw Cook’s Gucci hat and
approximately fifteen lines of cocaine on the coffee table. In mid-January 2002,
Holford tried to sell Cook’s Gucci hat for $100 to Frederick Morris, one of his friends. 
          Officer Ramsey secured arrest warrants for Holford and Vaughn, and executed
both of them at Vaughn’s apartment. A search of the apartment revealed a loaded
.380-caliber semi-automatic handgun, a Louis Vuitton wallet containing $843 in cash
and Vaughn’s identification, 22 butcher knives, two pocket knives, and Vaughn’s
tennis shoes with dried blood on both soles. 
          After arresting Vaughn and Holford, Officer Ramsey and his partner took the
men to the Stafford Police Station for questioning. There, Vaughn revealed that he
“got the best of Cook,” knocked him out, and then went into the kitchen to take
Cook’s drugs and money. Vaughn saw Holford cutting Cook’s throat and tying a
phone cord around Cook’s throat, but stated that he asked Holford to stop. Vaughn
conceded that he took $200 cash, drugs, clothing, and a .380 pistol from Cook. He
also admitted that he drove Holford home and returned to Cook’s apartment to retrieve
his cell phone.
          Holford told the police that while he and Vaughn were inside Cook’s apartment,
he was looking out of a window and heard Vaughn strike Cook with a large wrench. 
Holford claimed that he watched as Vaughn threw Cook around the apartment and
stabbed him with a knife. Holford claims that he then followed Vaughn into the
bedroom, telling Vaughn that they should get out of the apartment. Holford stated that
he watched Vaughn ransack the bedroom and take clothes and drugs from it. 
          Holford confessed to a fellow inmate that he and Vaughn went to Cook’s
apartment to rob him. He told the inmate that Vaughn hit Cook, grabbed him and used
a knife to cut his neck. While Vaughn used his knife, Holford hit Cook, causing Cook
to fall. Vaughn ran out the door while Holford continued to hit and kick Cook. 
Holford told the inmate that he and Vaughn agreed that they would have to kill Cook
because Cook knew them and that they could not use a gun to do it because it would
be too loud.
          An examination of Cook’s body revealed that he had dozens of blunt-force-trauma injuries on his face and body and a recently knocked-out tooth, and that he had
nearly been decapitated. Abrasions on Cook’s skin, including one above his left
eyebrow, were consistent with his having being struck by a wrench. A hole in Cook’s
right shoulder was consistent with the pointed end of the wrench’s having been driven
into the skin. 
          Holford wore shoes to his trial with soles that matched a bloody mark in Cook’s
kitchen. The footprint of these shoes also was consistent with stomp marks on Cook’s
body, made while Cook was still alive.
Jury Instructions
          Holford’s first four points of error concern the trial court’s instructions to the
jury. In his first two issues, Holford contends that the trial judge gave ambiguous 
application instructions regarding the law of parties. In his third and forth issues,
Holford contends that the disjunctive jury instruction denied him a unanimous verdict. 
 Standard of review
          When reviewing a trial court’s jury instructions, we first determine whether the
jury charge was erroneous. Nguyen v. State, 811 S.W.2d 165, 167 (Tex.
App.—Houston [1st Dist.] 1991, pet. ref’d). Error occurs when a jury charge fails to
directly apply the law to the facts. Harris v. State, 522 S.W.2d 199, 202 (Tex. Crim.
App. 1975). An erroneous jury charge does not result in an automatic reversal of a
conviction. Tex. Code Crim. Proc. Ann. 36.19 (Vernon 1981); Almanza v. State,
686 S.W.2d 157, 171 (Tex. Crim. App. 1984). Not only must there be error, but a
resulting harm that requires reversal must exist. Id. In the present case, Holford did
not object to the court’s charge. Reversal thus requires an error that is so egregious
and created such harm that Holford was denied a fair and impartial trial. See id. 
Application Paragraphs with the Law of Parties
            The application paragraph of a jury charge tells the jury under what
circumstances it can find the defendant guilty. McFarland v. State, 928 S.W.2d 482,
515 (Tex. Crim. App. 1996) (overruled on other grounds by Mosely v. State, 983
S.W.2d 249 (Tex. Crim. App. 1998)). Here, Holford’s application paragraphs
included the possibility of finding guilt under the law of parties. Under the law of
parties, a person may be criminally responsible for the murder committed by another
person if “acting with intent to promote or assist” the murder, he solicits, encourages,
directs, aids, or attempts to aid the other person” to commit the murder. See Tex. Pen.
Code Ann. § 7.02(a)(2) (Vernon 2003). 
          Holford contends that the trial court instructed the jury with ambiguous
application paragraphs concerning the law of parties. Holford contends that wording
within these paragraphs permitted the jury to convict him as a party to capital murder
if he intended to aid only in the robbery, as opposed to the required intent to aid in the
murder of Cook. The two application paragraphs at issue are as follows:
If you find from the evidence beyond a reasonable doubt that on or about
the 13th day of January, 2002, in Harris County, Texas, Harold Louis
Vaughn, did then and there unlawfully, while in the course of committing
or attempting to commit the robbery of Trevor Cook, intentionally cause
the death of Trevor Cook by cutting Trevor Cook with a deadly weapon,
namely, a knife, and that the defendant, David Charles Holford, with the
intent to promote or assist the commission of the offense, if any,
solicited, encouraged, directed, aided or attempted to aid Harold Louis
Vaughn to commit the offense, if he did; or
 
          . . . .
 
If you find from the evidence beyond a reasonable doubt that on or about
the 13th day of January, 2002, in Harris County, Texas, Harold Louis
Vaughn, did then and there unlawfully while in the course of committing
or attempting to commit the robbery of Trevor Cook, intentionally cause
the death of Trevor Cook by striking Trevor Cook with a deadly weapon
unknown to the Grand Jury, and that the defendant, David Charles
Holford, with the intent to promote or assist the commission of the
offense, if any, solicited, encouraged, directed, aided or attempted to aid
Harold Louis Vaughn to commit the offense, if he did; 
 
. . . then you will find the defendant guilty of capital murder, as charged
in the indictment.
 
Holford mis-quotes these paragraphs in his brief. He erroneously substitutes the
phrase “the offense of robbery” in place of “the robbery.”
           Both parties cite to Barnes v. State, 56 S.W.3d 221 (Tex. App.—Fort Worth
2001, pet. ref’d) as persuasive authority. The application paragraph in Barnes
instructed the jury that the defendant was guilty of the offense of capital murder if it
found “from the evidence beyond a reasonable doubt that on or about the 11th day of
October, 1997, in Tarrant County, Texas, Carlis Russell, did intentionally cause the
death of an individual, [C.H.], by shooting her with a deadly weapon, to-wit: a
firearm, and the said Carlis Russell was then and there in the course of committing or
attempting to commit the offense of robbery of [C.H.], and [appellant], acting with the
intent to promote or assist the commission of the offense of capital murder, if any,
solicited, encouraged, directed, aided or attempted to aid Carlis Russell in the
commission of the offense.” Id. at 235 (emphasis in original). 
          The Barnes court found that the trial court properly instructed the jury, by
requiring it to find that defendant assisted in the murder and not just in the robbery. 
The court noted that the prepositional phrase “in the commission of the offense”
referred to the previous phrase “the offense of capital murder.” Id.
          Here, as in Barnes, the charge describes the capital murder as necessarily
occurring “while in the course of committing or attempting to commit the robbery.” 
 Unlike Barnes, the charge does not refer to the robbery as “the offense.” Rather, the
charge requires the jury to find that Holford promoted or assisted Vaughn in
intentionally causing the death of Cook, while in the course of committing or
attempting to commit robbery. Read logically, the prepositional phrase “with the
intent to promote or assist the commission of the offense” refers to Cook’s murder,
that occurred “while in the course of committing or attempting to commit the
robbery.” Likewise, the clause “solicited, encouraged, directed, aided or attempted to
aid Harold Louis Vaughn to commit the offense” refers to Cook’s murder. 
          Furthermore, any error in the application paragraphs could not have caused
Holford “egregious harm,” a requirement because Holford did not object to the
instruction. To determine whether a defendant has sustained egregious harm from an
un-objected to instruction, we consider (1) the entire charge; (2) the state of the
evidence, including contested issues; (3) arguments of counsel; and (4) any other
relevant information. Hutch v. State, 922 S.W.2d 166, 171 (Tex. Crim. App. 1996). 
           In the present case, the jury charge read in its entirety clearly instructed the jury
that, before it could find Holford guilty under the theory of the law of parties, it had
to find that he participated and intended both the robbery and the murder. For
instance, the paragraph immediately preceding the application paragraphs cautioned
the jury that these elements were necessary: 
Before you would be warranted in finding the defendant guilty of capital
murder,. . . you must find from the evidence beyond a reasonable doubt
that the defendant, David Charles Holford, with the intent to promote or
assist in the commission of the offense of robbery, if any, solicited,
encouraged, directed, aided, or attempted to aid Harold Louis Vaughn
in cutting or striking Trevor Cook, if he did, with the intention of thereby
killing Trevor Cook . . . . 
 
(Emphasis added).
          Second, counsel for both the State and Holford argued to the jury that in order
to convict Holford, it must find that Holford intended Cook’s murder. Finally, the
State presented ample evidence to convict Holford and Holford has not challenged the
sufficiency of that evidence. We hold that, even if the trial court erred in the wording
of the application paragraphs, the error is not egregious. 
Disjunctive Jury Charge
          In his third and forth issues, Holford contends that a disjunctive jury charge
with a general verdict form deprived him of a unanimous finding, because it is
possible that some of the jurors did not unanimously agree on the underlying theories
of the State’s case. 
          In reviewing a disjunctive jury charge, we first determine whether the separate
application paragraphs contain different criminal acts or whether they merely instruct
as to different means of committing a single offense. If the disjunctive paragraphs
contain different criminal acts, then the jury must be instructed that it cannot return a
guilty verdict unless it agrees unanimously that the defendant committed one of the
acts. Ngo v. State, No. PD-0504-04, 2005 WL 600353, *3 (Tex. Crim. App., March
16, 2005) (designated for publication) (holding that because defendant was charged
with three different criminal acts of credit card abuse, jury had to unanimously agree
that defendant did at least one of three different things: steal the credit card, knowingly
receive the stolen credit card, or fraudulently present stolen credit card with intent to
obtain benefit). If the disjunctive paragraphs merely inform of different means of
committing a single offense, then the jury does not have to unanimously agree on
which alternative means the defendant used to commit the offense. Kitchens v. State,
823 S.W.2d 256 (Tex. Crim. App. 1991). In determining whether the paragraphs are
separate criminal acts or separate means of committing one act, “[a] handy, though not
definitive, rule of thumb is to look to the statutory verb defining the criminal act.” 
Ngo, 2005 WL at *4 n. 24. 
          The facts here are similar to those in Kitchens v. State, 823 S.W.2d 256 (Tex.
Crim. App. 1991). In Kitchens, the jury charge presented two alternative theories of
capital murder – one in the course of aggravated assault and the other in the course of
robbery. The Court of Criminal Appeals held that if alternative theories of the same
offense are submitted to the jury in the disjunctive, then the jury may return a general
verdict as long as the evidence is sufficient to support a finding under any of the
theories submitted. Id. at 258. No general requirement exists that the jury reach
agreement on the preliminary factual issues that underlie the verdict. Id. at 259. 
          Likewise, in Schad v. Arizona, 501 U.S. 624, 642–44, 111 S. Ct. 2491, 2502–03
(1991), the United States Supreme Court concluded that it is not unconstitutional to
instruct a federal jury that it could find a defendant guilty of felony murder or
premeditated murder within a single guilty verdict form.


 No general requirement
exists as part of the due process clause that a jury agree on the preliminary facts
underlying a verdict. Id.


 
          Here, Holford is charged with committing capital murder. The application
paragraphs permitted the jury to find Holford guilty upon finding that: (1) he
committed the capital murder; or (2) Vaughn committed the murder, and Holford was
criminally responsible for it under either the law of parties or as a conspirator. See
Tex. Pen. Code Ann. §§ 7.02(a)(2), 7.02(b). Only one statutory verb defines the
criminal act–causing the death of Cook during a robbery. Each of the disjunctive
paragraphs thus describes a different means of committing the same act. The
paragraphs instructing on conspiracy and law of parties include a transferred intent as
a potential means of committing the offense, but the transferred intent ultimately
relates to the same actus reus. Here, as in Schad and Kitchens, the actus reus of
Holford’s offense was murder. We hold that the trial court’s instructions require the
jurors to agree that Holford committed that single act (either directly or via transferred
intent), and thus the trial court did not err in failing to instruct the jury that it must
agree unanimously on the manner of Cook’s murder. 
          Holford attempts to distinguish Kitchens by contending that it did not involve
erroneous application paragraphs. We have held that the trial court did not err in its
submission of the application paragraphs, thus this distinction is without merit. 
Moreover, Holford’s complaint about the application paragraphs does not attack the
use of the alternative theories of the means of the murder. Instead, he complains that
“offense” was ambiguous as to its antecedent. 
          The trial court instructed the jury to find Holford guilty if he committed one act
and one offense – the capital murder of Cook. The State’s case presented alternative
theories of the method Holford used to commit the offense, and the State offered
evidence to convict Holford based on each alternative. On appeal, Holford has not
challenged the sufficiency of that evidence in any respect. We hold that the trial court
did not err in submitting a disjunctive jury charge with a general verdict for the single
offense of capital murder. Admissibility of Autopsy Photographs
          In his last issue, Holford contends that the trial court abused its discretion in
admitting three colored autopsy photographs: State’s Exhibit 305 (a photograph of the
decedent’s brain after the skull had been cut open) and State’s Exhibits 318 and 319
(photographs of the decedent’s lung).


 Holford contends that the photographs were
not helpful to the jury in resolving any contested issues of fact. Moreover, he
contends that any probative value of the photographs substantially is outweighed by
their prejudicial impact on the jury.
Standard of Review
          The trial court’s decision to admit or exclude evidence is reviewed for an abuse
of discretion. Montgomery v. State, 810 S.W.2d 372, 391 (Tex. Crim. App. 1991) (op.
on reh’g). 
Standard to Admit Photographs
          As a general rule, a photograph is admissible if it is relevant to a material issue
and is an accurate representation of its subject as of a given time. DeLuna v. State,
711 S.W.2d 44, 46 (Tex. Crim. App. 1986). Generally, relevant evidence may be
excluded if its probative value substantially is outweighed by the danger of unfair
prejudice. Tex. R. Evid. 403. We apply Rule 403 to these photographs and determine
whether they assist the jury with its decision of guilt and are relevant, legitimate and
logical to the testimony that they accompany. If helpful, photographs are admissible
unless “the emotional and prejudicial aspects substantially outweigh the helpful
aspects.” Erazo v. State, 144 S.W.3d 487, 491–92 (Tex. Crim. App. 2004).
 State’s Exhibit 305, 318 and 319
          Holford contends that State’s Exhibits 305, 318, and 319 could not have been
helpful to the jury because he did not dispute the severity of the injuries or the cause
of Cook’s death. Holford did not need to dispute these facts to make the photographs
probative. First, the autopsy photographs are material to the trial because they show
Cook’s injuries. See id. 144 S.W.3d at 494 (finding photographs could be helpful to
juries, in part, because they show wounds suffered by victim for whose death 
defendants were on trial). Second, with Holford’s consent, the State presented the
direct examination of most of its witnesses simultaneously before both Holford’s and
Vaughn’s juries.


 The medical examiner testified, and introduced his autopsy
photographs, before both juries. Therefore, in determining the relevancy of these
photographs, we look to the issues raised in both Holford’s and Vaughn’s trials. 
          The medical examiner used the photographs of the decedent’s lung (State’s
Exhibits 318 and 319) to illustrate that the stab wounds in Cook’s back were deep
enough to puncture his lung. He also used these photographs to illustrate the
discoloration caused by the blood inhaled into the lung, a sign that Cook was alive
when his throat was cut.
          The medical examiner used the photograph of Cook’s brain inside the skull
(State’s Exhibit 305) to illustrate multiple areas of bleeding, bruising and
hemorrhaging on the undersurface of the decedent’s scalp, matching the injuries on
Cook’s head. He also used this photograph to illustrate that the brain was surrounded
by collections of blood, supporting his opinion that the trauma to Cook’s head could
have been the cause of his death. Evidence that trauma to Cook’s head was severe
enough to kill him was relevant because Vaughn told the police that although he
“knocked” Cook out, Holford cut Cook’s throat. 
          We conclude that the autopsy photographs were probative of the nature of the
injuries to Cook and that they were helpful to the jury in determining Holford’s and
Vaughn’s participation in Cook’s death. We next determine whether the prejudicial
effect of the three photographs substantially outweighs their relevance. Tex. R. Evid.
403. We consider the probative value of the evidence, the potential of the evidence
to impress the jury in some irrational, but nevertheless indelible way, the time that the
proponent needs to develop the evidence, and the proponent’s need for the evidence. 
Erazo, 144 S.W.3d at 489. In the context of photographs, we also consider the number
of exhibits offered, their gruesomeness, their detail, their size, whether they are black
and white or color, whether they are close-up shots or of the whole body, whether the
body is naked or clothed, the availability of other means of proof, and other
circumstances unique to the individual case. Id. at 489 (citing Narvaiz v. State, 840
S.W.2d 415 (Tex. Crim. App. 1992)). 
          Autopsy photographs generally are admissible unless they depict mutilation of
the victim caused by the autopsy itself. Rojas v. State, 986 S.W.2d 241, 249 (Tex.
Crim. App. 1998). When photographs depict internal organs that have been removed
to portray the extent of the injury to the organs themselves, the photographs are not
considered to be depictions of mutilation of the victim by autopsy. Salazar v. State,
38 S.W.3d 141, 151–52 (Tex. Crim. App. 2001). 
          Here, the three photographs were admitted during the medical examiner’s
testimony. Such testimony constituted less than two out of the fifty-four pages of the
medical examiner’s direct testimony, and out of the six volumes of testimony in the
record–not an unreasonable amount of time. 
            The photographs are not particularly gruesome or emotionally charged, when
compared with photographs, admitted into evidence without objection, of the crime
scene, showing a nearly decapitated and badly beaten body in a pool of blood. The
autopsy photographs are not large: they are approximately three and one-half by five
inches in size. None of the photographs at issue show Cook’s entire body. The
photographs show only minimal damage caused from the autopsy. See Prible v. State,
No. AP-74487, 2005 WL 156555, at *10 (Tex. Crim. App. Jan. 26, 2005) (designated
for publication) (disembodied organs are not highly emotional, they are clinical).
          The photographs are three in number. Although Cook’s death was one of the
more traumatic ones that the medical examiner had seen, the State introduced only
twenty-five photographs. The medical examiner testified that out of the numerous
photographs taken, he chose those which best show the injuries to Cook. He further
stated that they were necessary to show to the jury the nature of the decedent’s
injuries. We conclude that the probative nature of State’s Exhibits 305, 318, and 319
is not substantially outweighed by any prejudicial effect. The trial court thus did not
abuse its discretion in admitting the autopsy photographs into evidence. 
 
Conclusion
          We conclude (1) the application paragraphs of the charging instructions are not
ambiguous and, even if they are, the instructions did not result in egregious harm to
the defendant; (2) the disjunctive charging instructions did not deny Holford a
unanimous verdict; and (3) the trial court did not error in admitting autopsy
photographs into evidence. We therefore affirm the judgment of the trial court.
 
          
                                                             Jane Bland
                                                             Justice
 
Panel consists of Chief Justice Radack and Justices Higley and Bland.
Publish. Tex. R. App. P. 47.2(b).