Opinion filed May 7, 2009











 
 
  
 
 







 
 
  
 
 




Opinion filed May 7, 2009

 

 

 

 

 

 

                                                                        In The

                                                                              

    Eleventh
Court of Appeals

                                                                 ____________

 

                                                          No. 11-07-00346-CR 

                                                     __________

 

                               ORLANDO
ADAM JAQUEZ, Appellant

                                                             V.

                                        STATE
OF TEXAS,  Appellee

 



 

                                         On
Appeal from the 350th District Court

                                                          Taylor
County, Texas

                                                   Trial
Court Cause No. 8078D

 



 

                                              M
E M O R A N D U M   O P I N I O N

 

The
jury convicted appellant of murder and assessed his punishment at confinement
for a term of seventy-five years in the Institutional Division of the Texas
Department of Criminal Justice.  Appellant challenges his conviction in three
issues.  We affirm.

                                                              Factual
Background

The
indictment charged appellant with intentionally and knowingly causing the death
of Adam Garcia by shooting him in the head with a handgun.  The indictment
additionally charged that he murdered Garcia by intentionally and knowingly committing
an act clearly dangerous to human life with the intent to cause serious bodily
injury to Garcia.








The
State based its case in large part on the testimony of Juan Jose Hernandez. 
Appellant and Garcia were both childhood friends of Hernandez.  Hernandez ran
into appellant at a bar approximately two weeks after Hernandez got out of
prison.  Hernandez and appellant reestablished their earlier friendship during this
meeting.  On the evening of October 28, 2006, appellant and Hernandez went to
the AEl Sitio@ bar in Abilene.  Hernandez
drove appellant to the bar in his brother=s
Cadillac.  Hernandez testified that appellant showed him that he had a pistol
when he got into the car.

After
staying at the El Sitio bar for an hour, Hernandez and appellant traveled to
another bar  called ACowboys.@  They then returned to the
El Sitio.  They encountered Garcia upon returning to the El Sitio.  Garcia
asked Hernandez why he was hanging out with appellant.  In this regard,
Hernandez testified that appellant was unpopular among his friends because he
had purportedly backed down from a fight.  Hernandez testified that Garcia and
appellant shook hands after Hernandez told Garcia that appellant told him that
the backing-down incident did not occur.

As
Hernandez and appellant were preparing to leave the bar, Garcia asked Hernandez
for a ride to his girlfriend=s
house.  When the group of three approached the car being driven by Hernandez,
Garcia and appellant got into an argument about who would ride in the front
passenger=s seat. 
Garcia won the argument because he rode in the front seat along with Hernandez
while appellant rode in the backseat.  Hernandez testified that the hostilities
between Garcia and appellant continued while Hernandez drove the car.  Garcia
called appellant various derogatory names during this episode.  Hernandez
testified that all three of the men were drunk at the time.

While
en route to Garcia=s
girlfriend=s house,
Garcia received information during a phone call about a party on Peach Street. 
Hernandez then began driving to the party.  On the way to the party, Hernandez
heard a gunshot.  Hernandez testified that, when he turned his head around
toward Garcia and appellant, he observed appellant shoot Garcia in the back of
the head for the second time.  Appellant instructed Hernandez to continue
driving.  Garcia fell over onto Hernandez when he turned the corner.  Appellant
subsequently instructed Hernandez to stop, at which time appellant pulled
Garcia out of the car by his arms and left him on the side of the road. 
Appellant then reentered the backseat of the car and directed Hernandez to
drive him to his mother=s
house.








Appellant
gave Hernandez another set of clothes after they arrived at appellant=s mother=s house because Hernandez
was covered in blood.  Appellant also changed clothes.  Hernandez and appellant
then reentered the car, and appellant instructed Hernandez to drive to
appellant=s sister=s house.  Appellant carried
his and Hernandez=s
clothes wrapped in a towel with him in the car.  After arriving at appellant=s sister=s trailer house that was
located in a wooded area, appellant attempted to clean up the blood inside of
the car with a chemical cleaner and towels.  Hernandez testified that appellant
also walked off into the wooded area with their clothes.  Hernandez and
appellant ultimately left the car at appellant=s
sister=s trailer
house.  Hernandez called Andrea Rocha to ask for a ride back to town.  She
dropped Hernandez off at his house, and she dropped appellant off at some
apartments.

Hernandez
called Brian Ramirez after Rocha dropped him off at his house to report that
appellant had shot Garcia.  Approximately ten minutes later, one of Garcia=s sisters and another
female picked up Hernandez and transported him to the location where appellant
dumped Garcia=s body. 
Ramirez and the police were already at the scene when Hernandez arrived. 
Hernandez approached officers at the scene to tell them what had occurred.  Hernandez
informed the police officers at the scene of the events that had occurred and
the location of the vehicle and the clothing. 

Marissa
Seballos was appellant=s
former girlfriend.  She testified that appellant called her at approximately
2:00 a.m. on the night of the murder to ask if he could come over to her
apartment.  Appellant spent the night at Seballos=s
apartment.  He remained at her apartment until the next morning when police
officers arrived to arrest him.  Seballos testified that appellant told her to
tell the police that she had picked him up at Cowboys at midnight.

Dr.
Nizam Peerwani of the Tarrant County Medical Examiner=s Office performed an autopsy on Garcia.  He
testified that Garcia died as a result of receiving two gunshot wounds to the
back of his head fired from a distance of twelve to fifteen inches.  The first
bullet entered Garcia=s
skull above his left ear.  The second bullet entered his skull in the center of
the back of his head.  Dr. Peerwani additionally testified that postmortem
toxicology results indicated that Garcia had a blood alcohol level of .304 and
that he had recently used cocaine.

Clayton
Daniels, a Acriminalist
officer@ with the
Abilene Police Department, testified about blood spatter evidence in the case. 
Based upon his examination of the shirt that Hernandez was wearing at the time
of the shooting, Officer Daniels concluded that Hernandez=s right arm was at his side
at the time the shooting occurred.  His examination of blood spatter on
appellant=s clothing
indicated appellant fired the weapon with his right arm.








Appellant
countered Officer Daniels=s
conclusions with the testimony of Louis Akin, a crime scene reconstructionist
retained by appellant.  Akin faulted Officer Daniels for not preparing diagrams
or making scientific calculations to support his findings.  Akin testified that
the most likely position of the shooter was behind the driver in the backseat.

                                                        Sufficiency
of the Evidence

Appellant
challenges the legal and factual sufficiency of the evidence in his first
issue.  To determine if the evidence is legally sufficient, the appellate court
reviews all of the evidence in the light most favorable to the verdict and
determines whether any rational trier of fact could have found the essential
elements of the crime beyond a reasonable doubt.  Jackson v. Virginia,
443 U.S. 307, 319 (1979); Hooper v. State, 214 S.W.3d 9, 13 (Tex. Crim.
App. 2007); Jackson v. State, 17 S.W.3d 664, 667 (Tex. Crim. App. 2000).
To determine if the evidence is factually sufficient, the appellate court
reviews all of the evidence in a neutral light. Watson v. State, 204
S.W.3d 404, 414 (Tex. Crim. App. 2006) (overruling in part Zuniga v. State,
144 S.W.3d 477 (Tex. Crim. App. 2004)); Johnson v. State, 23 S.W.3d
1, 10‑11 (Tex. Crim. App. 2000); Cain v. State, 958 S.W.2d
404, 407‑08 (Tex. Crim. App. 1997); Clewis v. State, 922 S.W.2d
126, 129 (Tex. Crim. App. 1996).  Then, the reviewing court determines whether
the evidence supporting the verdict is so weak that the verdict is clearly
wrong and manifestly unjust or whether the verdict is against the great weight
and preponderance of the conflicting evidence.  Watson, 204 S.W.3d at 414‑15;
Johnson, 23 S.W.3d at 10‑11.

We
begin our evidentiary analysis by noting that the State offered the testimony
of an eyewitness (Hernandez) that appellant murdered Garcia by shooting him
twice in the back of the head.  Appellant contends that the State failed to
prove his guilt because Hernandez=s
Aself-serving@ testimony should be
disregarded for various reasons.  He first contends that Hernandez=s testimony should be
disregarded because he is Aa
known felon with a history of violence.@ 
He also asserts that Hernandez=s
testimony should be ignored because the physical evidence, as analyzed by
appellant=s expert,
did not corroborate his testimony.  Appellant additionally argues that the
evidence supporting his conviction is insufficient because the police failed to
properly investigate the possibility that Hernandez was the person that shot
Garcia.








Appellant=s complaints regarding
Hernandez=s version of
the events bear directly on the credibility of his testimony.  The jury, as the
finder of fact, is the sole judge of the weight and credibility of the
witnesses= testimony. Tex. Code Crim. Proc. Ann. art. 36.13
(Vernon 2007), art. 38.04 (Vernon 1979).  Any inconsistencies in Hernandez=s testimony or conflicts
between it and the other evidence were exclusively within the jury=s province to resolve.  The
jury may believe some witnesses and refuse to believe others, and it may accept
portions of the testimony of a witness and reject other portions.  Lafoon v.
State, 543 S.W.2d 617 (Tex. Crim. App. 1976).  Viewing the evidence in the
light most favorable to the jury=s
verdict, we conclude the evidence is legally sufficient to support the
verdict.  From a factual sufficiency standpoint, the evidence supporting the
verdict is not so weak that the verdict is clearly wrong and manifestly unjust
when viewed in a neutral light.  Additionally, the evidence supporting
appellant=s guilt is
not against the great weight and preponderance of the conflicting evidence.  In
this regard, we do not find Akin=s
findings to be overwhelming.  The jury was free to resolve any discrepancies
between his findings and Officer Daniels=s
conclusions in favor of Officer Daniels.  Appellant=s first issue is overruled.

                                           Reference
to Appellant=s
Prior Incarceration

Appellant=s second and third issues
concern a statement made by Julia Perales, his former girlfriend, in response
to a question from the prosecutor.  The State asked: AWhen did you start seeing him or dating him?@  Perales replied: AIt was whenever he was
released from prison.@ 
Appellant=s trial
counsel immediately lodged an objection to the comment and asked to approach
the bench.  After the bench conference, the trial court instructed the jury as
follows:  

Ladies
and gentlemen, regarding the statement or the response by the witness, you are
instructed to disregard that response.  You are to give it no value as if it
was not said.  You are not to take it into your considerations for any purpose.

 

Appellant moved
for a mistrial after the trial court gave the above-quoted instruction.  He
complains in his second issue that the trial court erred in failing to grant
the requested mistrial.  In his third issue, appellant contends that the trial
court should have instructed the jury sua sponte on the burden of proof to be
used when considering evidence of an extraneous offense during the guilt phase.









A
mistrial is a device used to halt trial proceedings when error is so
prejudicial that expenditure of further time and expense would be wasteful and
futile.  Wood v. State, 18 S.W.3d 642, 648 (Tex. Crim. App. 2000).  We
review the denial of a motion for mistrial under an abuse of discretion
standard.  Hawkins v. State, 135 S.W.3d 72, 76‑77 (Tex. Crim. App.
2004).  Under this standard, an appellate court must uphold the trial court=s ruling as long as the
ruling was within the zone of reasonable disagreement. Wead v. State,
129 S.W.3d 126, 129 (Tex. Crim. App. 2004).

Reference
by a witness to a defendant=s
prior incarceration is improper because it violates the long-standing general
rule of evidence that prohibits the introduction of collateral offenses. Tennard
v. State, 802 S.W.2d 678, 685 (Tex. Crim. App. 1990).  A witness=s inadvertent reference to
an extraneous offense generally can be cured by a prompt instruction to
disregard.   Rojas v. State, 986 S.W.2d 241, 250 (Tex. Crim. App. 1998);
Sperling v. State, 924 S.W.2d 722, 725 (Tex. App.CAmarillo 1996, pet. ref=d).  We presume that a jury will obey a trial
court=s instruction to
disregard evidence that has not been admitted.  Ladd v. State, 3 S.W.3d
547, 567 (Tex. Crim. App. 1999).  An exception exists when the reference to an
extraneous offense was clearly calculated to inflame the minds of the jury or
was of such damning character as to suggest it would be impossible to remove
the harmful impression from the jurors=
minds.  Rojas, 986 S.W.2d at 250.

In
considering whether an instruction is sufficient to cure error, courts consider
whether the reference was direct or implied, intentional or inadvertent, and
detailed or vague as well as whether the topic was pursued once the instruction
was given.  Kipp v. State, 876 S.W.2d 330, 339 (Tex. Crim. App. 1994); Kemp
v. State, 846 S.W.2d 289, 308 (Tex. Crim. App. 1992).  Perales=s comment was not
responsive to the State=s
question, and our review of the record shows that it was unintentionally
elicited.  Although the comment was prejudicial to appellant, it was not of
such character that an instruction to disregard could not have removed the
impression produced in the minds of the jurors.  Furthermore, after Perales
made the comment, the trial court confirmed with the prosecutor that Perales
had been subsequently admonished not to mention any prior bad acts in her
testimony.  We conclude that the trial court=s
prompt instruction was sufficient to cure the prejudice caused by Perales=s comment.  Accordingly,
the trial court did not abuse its discretion in denying the motion for
mistrial.  Appellant=s
second issue is overruled.

In
his third issue, appellant contends that the trial court erred in failing to
sua sponte instruct the jury in the court=s
charge that, before it could consider the extraneous offense evidence reflected
in Perales=s comment,
it must first find that the State proved the offense beyond a reasonable doubt.









When reviewing a
challenge to the jury charge, we must first determine whether error actually
exists in the charge.  Almanza v. State, 686 S.W.2d 157 (Tex. Crim. App.
1985).  We conclude that the omission of a reasonable doubt instruction did not
constitute error because the State did not offer evidence of an extraneous
offense.  In this regard, Perales=s
comment was not responsive to the prosecutor=s
questioning.  Furthermore, immediately after Perales made the comment, the
trial court instructed the jury to disregard it.  As previously noted, we
presume that the jury will obey a trial court=s
instruction to disregard evidence.  Ladd, 3 S.W.3d at 567.  It would be
unreasonable to require the trial court to include an instruction to the jury
in the court=s charge
about its consideration of Perales=s
comment after the trial court had previously instructed the jury to disregard
it.  Moreover, the Texas Court of Criminal Appeals has held that a trial court
is not required to sua sponte instruct the jury on the burden of proof to be
used when considering evidence of an extraneous offense during the guilt
phase.  See Delgado v. State, 235 S.W.3d 244, 254 (Tex. Crim. App.
2007).  Appellant=s
third issue is overruled.

                                                               This
Court=s Ruling

The
judgment of the trial court is affirmed.

 

 

TERRY McCALL

JUSTICE

 

May 7, 2009

Do not publish. 
See Tex. R. App. P.
47.2(b).

Panel consists of:  Wright, C.J.,

McCall, J., and Strange, J.