# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-19-00353-CR

**Erica Lane Brownlee, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE 27TH DISTRICT COURT OF BELL COUNTY
### NO. 77236, THE HONORABLE JOHN GAUNTT, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

A jury convicted appellant Erica Lane Brownlee of felony murder. *See* Tex. Penal Code § 19.02(c). In three issues, appellant contends that the evidence was insufficient to convict her of felony murder and that the trial court abused its discretion when it admitted autopsy photographs. For the following reasons, we affirm the judgment of conviction.

## BACKGROUND

The jury heard evidence that on the evening of March 7, 2017, at an apartment complex, Rocky Marsh was robbed, stabbed with a screwdriver, and struck with a saw. Marsh sustained a fatal "penetrating wound" "on the upper left side of the chest" and "chop wounds on the top of his head." In response to 911 calls, EMS and the police were dispatched to the scene,

but they were unable to resuscitate Marsh. Marsh's front pants pockets had been pulled out, and he did not have his phone or other belongings on his person.[1]

In their investigation, the police recovered a saw, a beer bottle, and a black bag of the type used at a nearby convenience store, and they obtained surveillance-video footage from the convenience store. A portion of the footage contained audio and video capturing a verbal altercation between appellant's boyfriend James Pinkard and Marsh, which occurred right outside the store a short time before Marsh was killed. Although appellant is not seen on the video, she was the driver of the vehicle in the video and pregnant with Pinkard's child. The footage shows Marsh walking behind the vehicle with his phone, Pinkard getting outside of the vehicle from the front passenger seat and verbally confronting Marsh, saying "[y]ou don't know whose streets you're on," that Pinkard "[will] get somebody to come over and handle this shit, bro," and "[b]e here when [Pinkard got] back. Watch how many people are going to be here." Pinkard also told Marsh to "get away from [Pinkard's] baby's mama" and that Marsh "already pulled [a] knife." The video then shows Pinkard getting back into the vehicle's front passenger seat holding a crowbar and the vehicle driving away. Approximately fifteen minutes later, the vehicle returned briefly before leaving again. From the footage, the police were able to identify the vehicle and that it was registered to Pinkard. Following a traffic stop the following day, the police arrested Pinkard and appellant. The police found a crowbar, knife, and a Phillips-head screwdriver in the vehicle as well as blood stains that were later linked to Marsh through DNA testing.

---

[1] The responding officer who performed CPR on Marsh until EMS arrived testified at trial: "There was nothing in his pockets. The actual pocket, when you stick your hands, pull that lining out, I guess, where the pockets were pulled out, the material."

The State subsequently indicted appellant for felony murder of Marsh, alleging that she

> did then and there, acting individually and as a party with James Pinkard, Elijah Jones, Shamar Lamar Lewis, intentionally and knowingly commit or attempt to commit an act clearly dangerous to human life, to-wit: by hitting and striking Rocky Marsh with a saw and hitting and striking and stabbing Rocky Marsh with a screwdriver, and the defendant, acting individually and as a party with James Pinkard, Elijah Jones, Shamar Lamar Lewis was then and there in the course of intentionally and knowingly committing a felony, to-wit: Aggravated Robbery, and the death of Rocky Marsh was caused while the defendant, acting individually and as a party with James Pinkard, Elijah Jones, Shamar Lamar Lewis was in the course of and in furtherance of or the immediate flight from the commission or attempt of the Aggravated Robbery.

Shamar Lamar Lewis is Pinkard's brother, and he, Pinkard, and Elijah Jones, who was a juvenile at the time of the crime, were members of the Long Branch Posse gang.

The State's cases against Pinkard and appellant were joined and proceeded to a jury trial in January 2019.[2] The State's witnesses were investigating officers and detectives, the medical examiner who performed the autopsy, the store's owner who testified about the surveillance-video footage, a forensic scientist who provided DNA testimony, and Jones. Jones testified that he pled guilty as a party to capital murder of Marsh, was sentenced to thirty years' confinement, agreed to be a witness as part of the plea agreement, and was currently in the Texas Juvenile Justice Department-Institutional Division. As to the events surrounding Marsh's murder, Jones testified that members of the Long Branch Posse did not like strangers taking their pictures and that he was with Lewis when Pinkard called him and told him that a "dude" had "threatened" him and his "baby's mama" with a knife and took a picture of appellant's vehicle's license plate on his phone. Pinkard then told Jones that "he was going to come get [them]."

---

[2] The jury also found Pinkard guilty, and he has appealed from the trial court's judgment of conviction in this Court's cause number 03-19-00354-CR.

3

With appellant driving, they picked up Jones and Lewis, and they drove around to "find the dude that threatened [Pinkard] with the knife" to "[b]eat him up" and "[t]ake his phone." During the drive, Pinkard told Lewis "what happened," that Pinkard had a crowbar and that there was another one in the trunk, and "when we find him, to tell [appellant] to pop the trunk so [Lewis] can get the crowbar out of the trunk." Appellant saw Marsh at the apartment complex and "drove towards him." After she stopped the vehicle and "popped" the trunk, Lewis took out a "[s]aw and screwdriver" from the trunk, Pinkard got out of the vehicle with a crowbar and confronted Marsh, Lewis hit Marsh "in the back of the head" with the saw and stabbed and stomped on him, and Pinkard "came and went in [Marsh's front] pockets" and "took [his] phone and lighter" and a "knife." They then left in the vehicle with appellant driving to take Jones home, but they turned around to go back to the apartments because Lewis "told [them] he dropped the saw." They were unable to retrieve the saw because the police had already arrived.

The State's exhibits included: (i) photographs of the scene, items recovered at the scene including the saw, bottle of beer, and black bag, and items found in Pinkard's vehicle including the crowbar and screwdriver; (ii) 911 calls reporting the crime; (iii) the video-surveillance footage from the store; (iv) the DNA laboratory report, and (v) the autopsy report and photographs of Marsh's wounds. The evidence showed that Marsh purchased a bottle of beer at the convenience store shortly before the murder, and the black bag found at the scene matched the type of bag that the convenience store used. DNA testing linked Marsh to the "blade portion with the teeth" of the saw that was recovered from the scene and to stains found in the vehicle. Appellant's DNA also was linked to the knife that was in the vehicle when Pinkard and appellant were arrested the following day.

4

Appellant did not call any witnesses during the trial's guilt-innocence phase. The jury found appellant guilty, and the trial court thereafter held a punishment hearing and sentenced appellant to twenty-five years' confinement. This appeal followed.

## ANALYSIS

### Sufficiency of Evidence

In her first two issues, appellant contends that the evidence was insufficient to convict her of felony murder because: (i) there was insufficient evidence that she intended to commit an act clearly dangerous to human life that caused Marsh's death in the course of committing aggravated robbery or in the course of and in furtherance of or the immediate flight from that aggravated robbery, and (ii) under the law of parties, the evidence showed only that she was physically present at the commission of the offense but not that she aided or encouraged the commission of the offense by words or other agreement.

*Standard of Review*

Due process requires that the State prove, beyond a reasonable doubt, every element of the crime charged. *Jackson v. Virginia*, 443 U.S. 307, 316–17 (1979); *Lang v. State*, 561 S.W.3d 174, 179 (Tex. Crim. App. 2018). When reviewing the sufficiency of the evidence to support a conviction, we consider all the evidence in the light most favorable to the verdict to determine whether, based on that evidence and the reasonable inferences therefrom, any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson*, 443 U.S. at 319; *Temple v. State*, 390 S.W.3d 341, 360 (Tex. Crim. App. 2013).

The trier of fact is the sole judge of the weight and credibility of the evidence. *See Zuniga v. State*, 551 S.W.3d 729, 733 (Tex. Crim. App. 2018); *Blea v. State*, 483 S.W.3d 29,

5

33 (Tex. Crim. App. 2016); *see also* Tex. Code Crim. Proc. art 36.13 (stating that "the jury is the exclusive judge of the facts"). We presume that the trier of fact resolved conflicts in the testimony, weighed the evidence, and drew reasonable inferences in a manner that supports the verdict. *Jackson*, 443 U.S. at 319. When the record supports conflicting reasonable inferences, we presume that the factfinder resolved the conflicts in favor of the verdict, and we defer to that resolution. *Zuniga*, 551 S.W.3d at 733; *Cary v. State*, 507 S.W.3d 750, 757 (Tex. Crim. App. 2016) (citing *Jackson*, 443 U.S. at 326).

*Felony Murder*

As charged in this case, the State had to prove that appellant, individually or as a party, committed or attempted to commit aggravated robbery and, in the course and in furtherance of the commission or attempt, she, individually or as a party, committed or attempted to commit an act clearly dangerous to human life that caused Marsh's death. *See* Tex. Penal Code § 19.02(b)(3). A person commits robbery if, in the course of committing theft and with intent to obtain or maintain control of property, he "intentionally, knowingly, or recklessly causes bodily injury to another," *see id.* § 29.02(a)(1), and the offense of robbery is aggravated when the person "causes serious bodily injury to another," *see id.* § 29.03(a)(1). Because the charge authorized the jury to convict appellant individually or as a party, we must uphold the verdict of guilt if the evidence is sufficient on either theory. *See Anderson v. State*, 416 S.W.3d 884, 889 (Tex. Crim. App. 2013) (explaining that when charge authorizes jury to convict appellant on more than one theory, "the verdict of guilt will be upheld if the evidence is sufficient on any theory authorized by the jury charge" (citing *Guevara v. State*, 152 S.W.3d 45, 49 (Tex. Crim. App. 2004))).

6

"A person is criminally responsible as a party to an offense if the offense is committed by his own conduct, by the conduct of another for which he is criminally responsible, or both." Tex. Penal Code § 7.01(a). "A person is criminally responsible for an offense committed by the conduct of another if: . . . acting with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense." *Id.* § 7.02(a)(2). Section 7.02(b) of the Penal Code further provides:

> If, in the attempt to carry out a conspiracy to commit one felony, another felony is committed by one of the conspirators, all conspirators are guilty of the felony actually committed, though having no intent to commit it, if the offense was committed in furtherance of the unlawful purpose and was one that should have been anticipated as a result of the carrying out of the conspiracy.

*Id.* § 7.02(b).

"Party participation may be shown by events occurring before, during, and after the commission of the offense, and may be demonstrated by actions showing an understanding and common design to do the prohibited act." *Salinas v. State*, 163 S.W.3d 734, 739–40 (Tex. Crim. App. 2005) (citing *Ransom v. State*, 920 S.W.2d 288, 302 (Tex. Crim. App. 1994)); *see Gross v. State*, 380 S.W.3d 181, 186 (Tex. Crim. App. 2012). "Evidence is sufficient to convict under the law of parties where the defendant is physically present at the commission of the offense and encourages its commission by words or other agreement." *Salinas*, 163 S.W.3d at 739. A court may rely on circumstantial evidence to prove party status, and "[e]ach fact need not point directly to the guilt of the defendant, as long as the cumulative effect of the facts are sufficient to support the conviction under the law of parties." *Gross*, 380 S.W.3d at 186. "However, mere presence of a person at the scene of a crime, or even flight from the scene,

7

without more, is insufficient to support a conviction as a party to the offense." *Id.* (citing *Thompson v. State*, 697 S.W.2d 413, 417 (Tex. Crim. App. 1985)).

Appellant does not dispute that the evidence showed that she drove the vehicle to the apartments, pointed Marsh out to the others, and opened the trunk, but argues that to infer that she intended to commit an act dangerous to human life while in the course of committing or in flight from the commission of aggravated robbery or that she participated as a party in the commission of the offense by either words or other agreement, "based alone on those facts without more, is to engage in rank speculation." She argues that "[t]here was no testimony that anyone discussed or planned a confrontation, assault, or robbery of Marsh in her presence" and that she stayed in the vehicle during the incident. She relies on Jones's testimony that no plan was discussed in the vehicle to do anything to Marsh.

A rational trier of fact, however, could have found that Jones's testimony was inconsistent and resolved the inconsistencies in his testimony in favor of the verdict. *See Jackson*, 443 U.S. at 319; *Zuniga*, 551 S.W.3d at 733. Jones admitted that he had given three different statements to law enforcement, that he had not told the entire truth, and that he had lied. Further, in addition to the evidence that appellant drove the others to and from the crime scene, pointed Marsh out, and opened the trunk, she was with Pinkard at the store when he confronted Marsh and told Marsh that "[y]ou don't know whose streets you're on," that Pinkard "[will] get somebody to come over and handle this shit, bro," and "[b]e here when [he got] back. Watch how many people are going to be here." She also was driving Pinkard when he called Jones to tell him about Marsh taking a picture of his vehicle's license plate with Marsh's phone and threatening him and appellant with a knife. Jones testified that appellant called him about the "dude" who "threatened" him and Brownlee with a knife and took a picture of his license plate

8

and asked where Lewis was, that appellant and Brownlee then picked up Jones and Lewis and they drove around to "find the dude that threatened [Pinkard] with the knife" to "beat him up" and "take his phone." The jury reasonably could have inferred from this evidence that appellant heard the altercation between Pinkard and Marsh and Pinkard's phone conversation with Jones because she drove to pick up Lewis and Jones, drove around in search of Marsh, and then pointed him out to the others when she saw him. A jury also reasonably could have inferred that she knew that she was opening the trunk so that Lewis could retrieve a weapon to rob Marsh. Jones testified that Pinkard told Lewis as they were driving "what happened" and that "he got a crowbar and that there's another one in the trunk," and that Pinkard told Lewis "to tell [appellant] to pop the trunk so [Lewis] can get the crowbar out of the trunk when we see [Marsh]." After Lewis stabbed and struck Marsh with a saw and screwdriver and Pinkard took Marsh's belongings including a knife, appellant drove them away and then back to attempt to retrieve the saw. She also was in the vehicle the following day with Pinkard when the police located a screwdriver and a knife in the vehicle, and DNA testing linked the knife to her.

The jury reasonably could have credited this evidence to find that appellant planned with the others to rob Marsh of his property; that she "should have . . . anticipated" "an act clearly dangerous to human life" when they decided to rob Marsh using a saw, screwdriver, and crowbar, *see* Tex. Penal Code §§ 7.02(b), 19.02(b)(3); and that appellant aided the others in robbing and fatally assaulting Marsh, *see id.* § 7.02(a)(2); *Salinas*, 163 S.W.3d at 739–40. Viewing the evidence in the light most favorable to the verdict, we conclude that the cumulative effect of the facts is sufficient to support her conviction under the law of parties. *Gross*, 380 S.W.3d at 186; *Barrientos v. State*, 539 S.W.3d 482, 490 (Tex. App.—Houston [1st Dist.] 2017, no pet.) ("Courts have repeatedly upheld convictions under the law of parties when the

9

evidence establishes that the defendant participated in the commission of the offense by driving the getaway vehicle."). We overrule appellant's first and second issues.

**Autopsy Photographs**

In her third issue, appellant contends that the trial court abused its discretion by admitting autopsy photographs, the State's exhibits 65 through 68, 73, and 74, because they were unfairly prejudicial and should have been excluded under Rule of Evidence 403.

*Standard of Review and Applicable Law*

We review a trial court's decision to admit or exclude evidence for an abuse of discretion. *Gonzalez v. State*, 544 S.W.3d 363, 370 (Tex. Crim. App. 2018); *Henley v. State*, 493 S.W.3d 77, 82–83 (Tex. Crim. App. 2016). "An abuse of discretion does not occur unless the trial court acts 'arbitrarily or unreasonably' or 'without reference to any guiding rules and principles.'" *State v. Hill*, 499 S.W.3d 853, 865 (Tex. Crim. App. 2016) (quoting *Montgomery v. State*, 810 S.W.2d 372, 380 (Tex. Crim. App. 1990)). Further, we may not reverse the trial court's ruling unless the determination "falls outside the zone of reasonable disagreement." *Johnson v. State*, 490 S.W.3d 895, 908 (Tex. Crim. App. 2016); *see Henley*, 493 S.W.3d at 83 ("Before a reviewing court may reverse the trial court's decision, 'it must find the trial court's ruling was so clearly wrong as to lie outside the zone within which reasonable people might disagree.'" (quoting *Taylor v. State*, 268 S.W.3d 571, 579 (Tex. Crim. App. 2008))). An evidentiary ruling will be upheld if it is correct on any theory of law applicable to the case. *Henley*, 493 S.W.3d at 93 (citing *De La Paz v. State*, 279 S.W.3d 336, 344 (Tex. Crim. App. 2009)).

Rule 403 of the Texas Rules of Evidence allows for the exclusion of otherwise relevant evidence if its probative value is substantially outweighed by the danger of, among other things, "unfair prejudice." Tex. R. Evid. 403. "Rule 403 favors the admission of relevant evidence and carries a presumption that relevant evidence will be more probative than prejudicial." *Davis v. State*, 329 S.W.3d 798, 806 (Tex. Crim. App. 2010); *Gallo v. State*, 239 S.W.3d 757, 762 (Tex. Crim. App. 2007). "The probative force of evidence refers to how strongly it serves to make the existence of a fact of consequence more or less probable." *Gonzalez*, 544 S.W.3d at 372; *accord Davis*, 329 S.W.3d at 806.

"'Unfair prejudice' refers to a tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." *Davis*, 329 S.W.3d at 806; *accord Gigliobianco v. State*, 210 S.W.3d 637, 641 (Tex. Crim. App. 2006). "All testimony and physical evidence are likely to be prejudicial to one party or the other." *Davis*, 329 S.W.3d at 806. "To violate Rule 403, it is not enough that the evidence is 'prejudicial'—it must be unfairly prejudicial." *Vasquez v. State*, 67 S.W.3d 229, 240 (Tex. Crim. App. 2002). It is only when there exists "a clear disparity between the degree of prejudice of the offered evidence and its probative value that Rule 403 is applicable." *Hernandez v. State*, 390 S.W.3d 310, 324 (Tex. Crim. App. 2012) (citing *Davis*, 329 S.W.3d at 806); *see Johnson*, 490 S.W.3d at 911 ("Under Rule 403, the danger of unfair prejudice must *substantially* outweigh the probative value.").

Concerning photographs, Rule 403 requires that a photograph possess some probative value and that its inflammatory nature not substantially outweigh that value. *Gonzalez v. State*, 616 S.W.3d 585, 594 (Tex. Crim. App. 2020) (citing *Williams v. State*, 301 S.W.3d 675, 690 (Tex. Crim. App. 2009)). "We examine several factors, including the photographs' probative value, their potential to impress the jury in some irrational and indelible way, the time

11

needed to develop the evidence, and the proponent's need for the photographs." *Id.* (citing *Prible v. State*, 175 S.W.3d 724, 733 (Tex. Crim. App. 2005)). "We also consider their number, gruesomeness, detail, and size; whether they are in color, are close-ups, and depict a clothed versus a naked body; the availability of other means of proof; and other circumstances unique to the individual case." *Id.* (citing *Williams*, 301 S.W.3d at 690). Autopsy photographs are generally admissible unless they depict mutilation of the victim caused by the autopsy itself. *Rojas v. State*, 986 S.W.2d 241, 249 (Tex. Crim. App. 1998) (citing *Santellan v. State*, 939 S.W.2d 155, 172 (Tex. Crim. App. 1997)).

*Exhibits 73 and 74*

Appellant did not object to the admission of exhibits 73 and 74 at trial. To preserve error for appellate review, a party must make a timely and specific objection at the earliest possible opportunity and obtain an adverse ruling from the trial court, and the complaint on appeal must correspond to the objection made at trial. *Yazdchi v. State*, 428 S.W.3d 831, 844 (Tex. Crim. App. 2014); *see* Tex. R. App. P. 33.1(a); *Pena v. State*, 353 S.W.3d 797, 807 (Tex. Crim. App. 2011). A reviewing court should not address the merits of an issue that has not been preserved for appeal. *Wilson v. State*, 311 S.W.3d 452, 473–74 (Tex. Crim. App. 2010) (citing *Ford v. State*, 305 S.W.3d 530, 532 (Tex. Crim. App. 2009)). Because appellant did not object to the admission of exhibits 73 and 74 at trial, she has not preserved her complaint for our review as to those exhibits.

*Exhibits 65 through 68*

As to exhibits 65 through 68, appellant argues that there was no articulable reason to admit the photographs because they had no probative value to any issue before the jury. In his

12

testimony, the medical examiner testified that he took photographs, including State's exhibits 65 through 68, to document and help explain what he saw and why he made the diagnosis that he did. Exhibit 65 is an identification photograph of Marsh's face, and exhibits 66 through 68 are photographs of the wound and abrasions around the wound to Marsh's chest with varying views of closeness. The medical examiner testified that this wound had a "cross" entry pattern that was consistent with the blade of the Phillips-head screwdriver recovered from Pinkard's vehicle and that the abrasions around the wound were consistent with the handle of a screwdriver being pressed to the skin.

Appellant argues that the photographs had no probative value because neither the cause nor means of Marsh's death was at issue and that the medical examiner's testimony by itself was adequate to establish that the assailant used a screwdriver to stab Marsh in the chest. Appellant contends that only the identity of Marsh's killer or killers was before the jury, that the autopsy photographs did not aid the jury in resolving that issue, that they were "superfluous," and that they "served only as vivid and gruesome evidence that Marsh's life had been violently taken—by someone."

The photographs, however, were probative of the manner and means of Marsh's death, served to corroborate the accomplice testimony of Jones that Lewis stabbed Marsh with a screwdriver, and connected Pinkard and appellant to the attack because a screwdriver that was consistent with Marsh's chest wound was found in Pinkard's vehicle when Pinkard and appellant were arrested. *See* Tex. Code Crim. Proc. art. 38.14 (requiring testimony of accomplice to be corroborated with other evidence tending to connect defendant with offense committed). The admission of one face shot and three photographs of the chest wound also was not time consuming and did not have the potential to impress the jury in "some irrational and indelible

13

way." *See Gonzalez*, 616 S.W.3d at 594 (listing factors to consider in Rule 403 analysis concerning photographs). We conclude that the admission of exhibits 65 through 68 was not unfairly prejudicial and that the trial court did not abuse its discretion in overruling appellant's objection and admitting them. *See id.*; *Rojas*, 986 S.W.2d at 249 (explaining that autopsy photographs generally are admissible).

Because we conclude that the trial court did not abuse its discretion in admitting the State's exhibits 65 through 68 and that appellant has not preserved her complaint about the admission of the State's exhibits 73 and 74, we overrule appellant's third issue.

## CONCLUSION

Having overruled appellant's issues, we affirm the trial court's judgment of conviction.

_____

Melissa Goodwin, Justice

Before Justices Goodwin, Kelly, and Smith

Affirmed

Filed: May 27, 2021

Do Not Publish