**Affirmed and Memorandum Opinion filed August 29, 2023.**



In The

# Fourteenth Court of Appeals

---

## NO. 14-22-00362-CR

---

**JACK FLYNN CARLIN, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 183rd District Court
Harris County, Texas
Trial Court Cause No. 1664373**

---

## M E M O R A N D U M   O P I N I O N

A jury found Appellant Jack Flynn Carlin guilty of aggravated sexual assault of an elderly person and assessed punishment at life imprisonment. *See* Tex. Penal Code Ann. § 22.021(a)(1)(A)(i), (a)(2)(C). On appeal, Appellant asserts the trial court erred when it denied his motion for mistrial following testimony from Complainant that referenced an extraneous sexual assault allegedly committed by Appellant. For the reasons below, we affirm.

## BACKGROUND

Appellant was naked when he was apprehended by Houston police officers in Complainant's home on February 12, 2020. Appellant was arrested and charged with aggravated sexual assault of an elderly person. Appellant proceeded to a jury trial in May 2022. We summarize below relevant portions of the witness testimony and evidence presented at trial.

### *Complainant*

Complainant said she was 86 years old on the day of the incident and lived alone at her Houston home. Complainant recalled hearing someone knock on her front door at approximately 7:00 a.m. Complainant said Appellant was at her door and told her to "let [him] in"; Complainant responded "no" and, in an attempt to scare Appellant away, told him she had a gun. According to Complainant, Appellant then went to her home's back door and entered by breaking the glass patio door.

Complainant testified that, after Appellant entered her home, he took off his clothes and told her to take off her clothes, too. Complainant complied, recalling that she "was afraid he might kill me if I didn't." Complainant said Appellant also carried a leather dog leash and she was afraid "he might, you know, choke me to death with it."

According to Complainant, Appellant told her to "go in the bedroom" where he proceeded to sexually assault her. Describing this further, Complainant said Appellant would "put his mouth on [her] vagina" before putting his penis into her vagina. Complainant said Appellant also "tried to put [his penis] in [her] mouth."

Complainant testified that Appellant "threw [her] onto the floor" two or three times during the incident, which knocked out several of her bottom teeth.

Describing Appellant as a "big man," Complainant said she was "afraid he would kill me." According to Complainant, Appellant remained in her house for four-to-five hours and alternated between sexually assaulting her and "tak[ing] a break."

At one point during the ordeal, Complainant said she was able to crawl into the living room to answer the ringing phone. Complainant said her granddaughter was on the phone and she told her granddaughter to call 911. According to Complainant, the police arrived approximately 20 minutes later. Complainant said Appellant "ran to the back of the house" when the police officers began knocking on her front door.

Complainant said she stayed at the hospital for two-to-three weeks after the incident. Complainant said she sustained injuries to her neck and cheek as well as a fractured vertebrae.

### *Granddaughter*

According to Granddaughter, Complainant was 86 years old at the time of the incident and lived alone at her Houston home. Granddaughter said Complainant "moved around with a walker" and was able to speak and communicate clearly.

Granddaughter said the day of the incident began as usual. Granddaughter recalled calling Complainant at approximately 6:00 a.m. to check in on her; Granddaughter said Complainant "was doing fine, just like any other day." Granddaughter hung up with Complainant and continued on with her day.

Granddaughter testified that she called Complainant for a second time at approximately 11:30 a.m. Granddaughter said Complainant sounded "very scared," told her "there was a man in her house," and asked Granddaughter to call 911. Granddaughter called 911 to report the incident and proceeded to drive to

3

Complainant's home.

According to Granddaughter, when she arrived at the house she saw officers leading Complainant down the driveway. Granddaughter recalled that Complainant looked "[l]ike she got beat up," with injuries to her cheek and chest. Granddaughter said some of Complainant's teeth were missing and that Complainant "looked like she was shaken up really, really bad."

### Officer Whang

On the day of the incident, Officer Whang was dispatched to Complainant's house with reports of a "burglary in progress." According to Officer Whang, he knocked on Complainant's door, which she answered after "probably a minute or so." Officer Whang recalled that Complainant was "very nervous, shaking, [and] trembling." Officer Whang said he "could immediately tell something happened to her inside."

After Complainant was escorted away from the house, Officer Whang said the officers waited for the K-9 unit to arrive before entering the home. According to Officer Whang, the K-9 dog apprehended Appellant in the home. Officer Whang recalled that Appellant was naked and his clothes were scattered throughout the house. Officer Whang found Appellant's pants, which contained his wallet and driver's license.

Officer Whang said he handcuffed Appellant. Officer Whang "suspected [Appellant] being high on — possibly high on drugs" and noted that Appellant was "lost," "confused," and "sweating a lot."

### Karin Hoffmann

Hoffmann is a sexual assault nurse examiner and examined Complainant the day of the incident. Hoffmann noted bruising on Complainant's face, shoulders,

arms, hands, neck, chest, and hips as well as a fracture to her lower spine. Hoffmann also documented tears in Complainant's genitalia and opined that these types of injuries "require[d] penetration."

## *Conclusion of Trial*

After the parties rested, the jury deliberated and found Appellant guilty of aggravated sexual assault of an elderly person. At the punishment phase of trial, the State introduced evidence showing that Appellant previously had been convicted of burglary of a habitation and aggravated assault, as well as two convictions for misdemeanor indecent exposure.

Granddaughter also testified at the punishment hearing regarding the incident's effects on Complainant. Granddaughter said Complainant used to be "very independent" and "would always do everything by herself." But after the incident, Granddaughter said Complainant "doesn't want to leave the house ever" and "doesn't want to be alone for more than five minutes." Although Complainant used to live alone at her home, Granddaughter said Complainant now lives with Granddaughter at her apartment.

The jury assessed Appellant's punishment at life imprisonment. Appellant timely appealed.

### ANALYSIS

On appeal, Appellant asserts the trial court erred when it denied his motion for mistrial following testimony from Complainant that referenced an alleged extraneous sexual assault committed by Appellant. Specifically, during cross-examination, Complainant and defense counsel had the following exchange:

> Defense Counsel:   Did [Officer Whang] ask you about what happened to you?

5

| | |
|---|---|
| Complainant: | Yes, sir, and I told him. |
| Defense Counsel: | And you told him? |
| Complainant: | Yes, sir. |
| Defense Counsel: | Did you tell him anything about — about [Appellant] ejaculating? |
| Complainant: | Yes, sir. |
| Defense Counsel: | What did you tell him? |
| Complainant: | I told him that he raped me, and he said he did it before and he slipped through the crack. |

Defense counsel objected, and the trial court instructed the jury to disregard Complainant's answer. Defense counsel moved for a mistrial, which the trial court denied.

When the jury took its afternoon break, defense counsel re-urged Appellant's motion for mistrial based on Complainant's reference to Appellant's alleged commission of an extraneous sexual assault. The following discussion was had at the bench:

| | |
|---|---|
| Defense Counsel: | Judge, I'd like to re-urge my motion for a mistrial based on the comments blurted out by [Complainant]. |
| | Just to clarify what happened — and I believe the record would bear out — was I asked a question unrelated to what she ended up blurting out, and she stated the officer told her that [Appellant] had done this before and gotten away with it and blurted that out to the jury. |
| | It's violating my motion in limine, which the State is — it's incumbent on them to inform her of what she can and can't say. |
| | And, second, it's extremely prejudicial towards my client, not only in guilt/innocence but in punishment particularly, that this jury will be under the impression that he is a repeat offender who has gotten away with |

6

this before.

And, third, it's not even true, according to any evidence I've been given, that he's ever been charged with sexual assault before or gotten away with it, for that matter, as the officer told her.

So, judge, I don't think just a simple curative instruction is sufficient to undo the prejudice to my client, both as far as the guilt/innocence — the guilt or not guilty determination, but particularly if we end up in a punishment hearing that they are under the impression that he is a repeat offender.

Prosecutor: It was elicited — I think the question was about what an officer told her, and she simply answered the Defense's question. I didn't elicit any such information. The Court itself didn't understand what she said. I think it was very much harmless and — if it was caught or picked up on at all.

Trial Court: Yeah, I mean, I was — as I told you, I was sitting right next to her and I couldn't understand what she said. And so you may have understood it because she was facing you. I thought she was talking about a crack in her body. I didn't know what she said. I'm not sure that the jury did.

But I sustained your objection and gave them an instruction to disregard, and I think the fact that it was mentioned in passing once is cured by an instruction to disregard.

\*          \*          \*

Like I said, I'm sitting right next to her and I couldn't understand her. Her testimony in general has been somewhat hard to hear and garbled. And so given the fact that I couldn't understand it, I don't know if the jurors did or not. But I'm confident that my instruction cured it if they did.

Asserting that the trial court erred by denying his motion for mistrial, Appellant argues that the jury assessed punishment at life imprisonment "because it heard

7

exactly what the eighty-six-year-old Complainant said" with respect to the alleged extraneous sexual assault.

## I.        Standard of Review

We review a trial court's denial of a motion for mistrial for an abuse of discretion.  *Ocon v. State*, 284 S.W.3d 880, 884 (Tex. Crim. App. 2009); *Jackson v. State*, 495 S.W.3d 398, 421 (Tex. App.—Houston [14th Dist.] 2016, pet. ref'd). We view the evidence in the light most favorable to the trial court's ruling and will uphold the ruling if it falls within the zone of reasonable disagreement.  *Ocon*, 284 S.W.3d at 884.  A mistrial is an extreme remedy reserved for a narrow class of cases in which the error is highly prejudicial and incurable.  *Id*.; *see Hawkins v. State*, 135 S.W.3d 72, 77 (Tex. Crim. App. 2004) (en banc) ("Only in extreme circumstances, where the prejudice is incurable, will a mistrial be required.").

To evaluate whether the trial court abused its discretion by denying the motion for mistrial, we balance the three "*Mosley*" factors:  (1) the severity of the misconduct (the magnitude of the prejudicial effect of the challenged remarks); (2) the measures adopted to cure the misconduct (the efficacy of any cautionary instruction by the judge); and (3) the certainty of the punishment assessed absent the misconduct (likelihood of the same punishment being assessed).  *Archie v. State*, 340 S.W.3d 734, 739 (Tex. Crim. App. 2011) (citing *Mosley v. State*, 983 S.W.2d 249 (Tex. Crim. App. 1998) (en banc)); *see also Hawkins*, 135 S.W.3d at 77 (applying the *Mosley* factors to punishment proceedings in a non-capital case). In sum, the grant of a mistrial is proper "when error is so prejudicial that expenditure of further time and expense would be wasteful and futile."  *Ladd v. State*, 3 S.W.3d 547, 567 (Tex. Crim. App. 1999).

## II.  Application

We address the *Mosley* factors individually.

### *Severity of the Misconduct*

Viewing the record in the light most favorable to the trial court's ruling (*see Ocon*, 284 S.W.3d at 884), we conclude that the prejudicial effect of Complainant's testimony was low because the challenged testimony was brief, non-specific, and not repeated at either the guilt/innocence or punishment phases of trial.  *See, e.g.*, *Rojas v. State*, 986 S.W.2d 241, 250 (Tex. Crim. App. 1998) (mistrial not warranted when reference to extraneous offense was "not [] concrete" but "merely vague speculation").

Moreover, as the trial court stated, Complainant's testimony had been "hard to hear" during trial.  Discussing this specific line of questioning, the trial judge said she "couldn't understand" the substance of Complainant's response even though she was "sitting right next to" Complainant.  Accordingly, it is likely the jury also had difficulty understanding Complainant's testimony and the challenged response, further mitigating the prejudicial effect of her reference to the alleged extraneous sexual assault.

This factor weighs in favor of the trial court's denial of Appellant's motion for mistrial.

### *Measures Adopted to Cure the Misconduct*

As stated above, after defense counsel objected to Complainant's response, the trial court promptly instructed the jury to "disregard the witness's last answer." The trial court did not reference the substance of the answer or its allusion to an extraneous sexual assault.

A prompt instruction to disregard will usually cure any prejudice resulting

9

from improper testimony regarding extraneous offenses. *See Ovalle v. State*, 13 S.W.3d 774, 783 (Tex. Crim. App. 2000) (en banc); *Austin v. State*, 222 S.W.3d 801, 815 (Tex. App.—Houston [14th Dist.] 2007, pet. ref'd). Appellate courts generally presume that a jury follows a trial court's instruction to disregard the improper testimony. *Thrift v. State*, 176 S.W.3d 221, 224 (Tex. Crim. App. 2005). Appellant did not point out — and our review of the record did not find — any evidence suggesting that the jury failed to follow the trial court's instruction to disregard.

Moreover, courts generally have held that, when a witness inadvertently, non-responsively references an extraneous offense attributable to the defendant, that error is usually cured by a prompt instruction to disregard. *See, e.g., Rojas*, 986 S.W.2d at 250 (witness's reference to the appellant's "past anger" and "past violence" cured by instruction to disregard); *Tennard v. State*, 802 S.W.2d 678, 685 (Tex. Crim. App. 1990) (en banc) (per curiam) (holding that a witness's reference to meeting up with the appellant "[w]hen he first got out of the penitentiary" was cured by prompt instruction to disregard); *Hebert v. State*, 489 S.W.3d 15, 20-21 (Tex. App.—Houston [14th Dist.] 2016, no pet.) (reference to a bag of marijuana found in the appellant's vehicle cured by instruction to disregard); *Rogers v. State*, 200 S.W.3d 233, 238 (Tex. App.—Houston [14th Dist.] 2006, pet. ref'd) ("brief and equivocal mention of drug use" cured by instruction to disregard); *Drake v. State*, 123 S.W.3d 596, 604 (Tex. App.—Houston [14th Dist.] 2003, pet. ref'd) (witness's statement that officers "were working so many burglaries on [the appellant]" mitigated by curative instruction). Here too, any harm from Complainant's vague reference to an alleged extraneous sexual assault was significantly mitigated by the trial court's instruction to disregard.

This factor weighs in favor of the trial court's denial of Appellant's motion for mistrial.

### *The Certainty of the Punishment Assessed Absent the Misconduct*

Finally, considering the record as a whole, Complainant's reference to the alleged extraneous sexual assault likely did not influence the jury's assessment of punishment.

First, as noted by the trial court, Complainant's testimony was difficult to hear and understand. The trial court did not catch the challenged reference until it was objected to by defense counsel, despite sitting next to Complainant as she testified. These circumstances suggest the jury also was unlikely to understand Complainant's reference to the alleged extraneous sexual assault.

Second, the trial court promptly instructed the jury to disregard the answer. The trial court did not reiterate the substance of Complainant's challenged response and the alleged sexual assault was not referenced again during either the guilt/innocence or punishment phases of trial.

Finally, any effects from the vague reference to an alleged extraneous sexual assault likely were overshadowed by the other testimony and evidence heard by the jury. The jury heard a significant amount of testimony from Complainant in which she detailed the violent sexual assault. The jury also saw numerous pictures of Complainant showing the extent of the injuries to her face and neck. Granddaughter testified at the punishment hearing about the effects of the sexual assault on Complainant and how she can no longer live alone. Moreover, identity was never an issue in this case — Appellant was apprehended at Complainant's house shortly after the police officers arrived. Against this backdrop, Complainant's passing, non-specific reference to an alleged extraneous sexual

assault likely did not affect the punishment assessed.

This factor weighs in favor of the trial court's denial of Appellant's motion for mistrial.

Given these circumstances and the record as a whole, we conclude that the trial court's denial of Appellant's motion for mistrial does not constitute an abuse of discretion. We overrule Appellant's sole issue on appeal.

## CONCLUSION

We affirm the trial court's judgment.

/s/     Meagan Hassan
        Justice

Panel consists of Justices Jewell, Hassan, and Wilson.

Do Not Publish — Tex. R. App. P. 47.2(b).